## A. E. FLANNIGAN v. STATE OF NEBRASKA.

FILED APRIL 21, 1933. No. 28503.

*J. J. Harrington, J. C. Cook* and *H. D. Curtiss,* for plaintiff in error.

*C. A. Sorensen, Attorney General, Irvin A. Stalmaster* and *L. G. Nelson, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

GOOD, J.

A. E. Flannigan, hereinafter called defendant, cashier of the Bassett State Bank, was convicted of subscribing to a false statement concerning the assets of said bank, with intent to deceive persons authorized by law to examine into the affairs of the bank. He was sentenced to imprisonment in the penitentiary for a term of not less than one nor more than ten years. He brings to this court for review the record of his conviction.

The particular false statement charged is that, in a statement made by him as cashier, defendant represented that the bank owned a promissory note of one M. J. Lipman for $3,000, when, in fact, at the time the statement was made the bank did not own or possess any note on which Lipman was liable for $3,000, or for any other amount. The evidence discloses beyond dispute that some time prior to the making of the statement the bank had in its possession as an asset a promissory note for $3,600, purporting to have been signed by M. J. Lipman; that previous to the examination a charge-off had been made on this note of $600, so that it was being carried as an asset to the extent of $3,000. The payee named in this note was the First National Bank, and that bank indorsed

and delivered the note to the Bassett State Bank. The Bassett State Bank was organized by officers of the First National Bank and took over the assets and business of the latter bank, after which the First National Bank ceased operations as a banking institution. Lipman claimed the note to be a forgery, and there appears to have been considerable litigation between Lipman, the First National Bank and the Bassett State Bank and other banks, of which defendant and his brothers were officers. On the 10th of April, 1929, these several banks and their officers and Lipman entered into an agreement whereby they settled all controversies between them, including all notes or liabilities of any kind owing by Lipman to any one of the several banks, including the Bassett State Bank. The contract of settlement was executed in triplicate. Lipman and other witnesses for the state testified that the note in question at that time was surrendered to Lipman. Defendant and other witnesses in his behalf testified that the note was not at that time surrendered to Lipman, but was in the hands of the bank's attorney at O'Neill, Nebraska, for collection, and defendant contends that, while Lipman was released from liability, the First National Bank was liable thereon as indorser to the Bassett State Bank, and the note was carried as an asset because of the liability of the indorser.

July 11, 1929, a state bank examiner examined into the affairs of the Bassett State Bank, and at that time defendant, as cashier of the bank, subscribed to a statement showing the list of assets owned by the bank. In that list appears note of M. J. Lipman, $3,000. The bank's record of bills receivable showed note of M. J. Lipman, but did not disclose that the First National Bank was liable thereon as indorser. When the bank examiner inquired for this note, he was informed that it was in the hands of the bank's attorney for collection. Defendant insists that at the time of the examination he disclosed to the examiner that Lipman was not liable on the note, but that it was being held as a liability against the First

National Bank because of its indorsement, and insists that the copy of the contract of settlement, above referred to, was in the note case of the bank, together with a memorandum that the note in question was in the hands of an attorney for collection, and that the examiner saw and examined the contract and memorandum. The bank examiner testified that no such contract was there, nor was it shown to him, nor did he have any knowledge thereof, or any knowledge or information that Lipman had been released from liability on the note.

Defendant contends that he did not have a fair trial, and assigns numerous errors, which will not require discussion. We shall confine our discussion of errors to those which seem to be proper for the disposition of the case.

It is contended that the evidence is insufficient to sustain the verdict, because the examination made of the Bassett State Bank by the examiner did not occur in the presence of two of the bank's directors, as required by law. The statute, making it an offense for an officer of a bank to make a false statement to a person authorized to examine the bank, is not confined to statements made when the bank is undergoing a regular examination by a bank examiner. If a material false statement is made by an officer of the bank to any person authorized to examine into its affairs, with an intent to deceive such examiner, it constitutes an offense, regardless of whether such examination or statement was made in the presence of two directors.

Complaint is made that a member of the jury was incompetent to act as a juror because he was a deputy sheriff. The statute, defining those who are competent to sit as jurors, excludes therefrom sheriffs, but does not specifically mention deputy sheriffs. It has been held by the United States circuit court of appeals in the case of *Robinson v. Territory of Oklahoma*, 78 C. C. A. 520, that a statute which disqualifies sheriffs from performing jury service applies as well to deputies as to principal

sheriffs. Certainly, every reason that would exclude a sheriff from jury service would apply to the sheriff's deputy. In the instant case, however, the question of the competency of the jury was not raised until after verdict and in affidavits in support of a motion for a new trial. Defendant was accorded an opportunity to examine the jury as to their qualifications before they were sworn to try the cause. Evidently, he failed to question the juror with respect to his official capacity. In this defendant was negligent. Had he at that time examined the juror, developed the fact that he was a deputy sheriff, and challenged him on that ground, we think the court should, and no doubt would, have sustained the challenge. However, the objection in this case is unavailing.

It is a general rule that incompetency of a person to serve as a juror will be held waived by the failure to interrogate the juror on his *voir dire* as to his competency, and to challenge for that cause. The proposition is supported by the following decisions: *Marino v. State,* 111 Neb. 623; *Reed v. State,* 75 Neb. 509; *Turley v. State,* 74 Neb. 471; *Coil v. State.* 62 Neb. 15; *Hickey v. State,* 12 Neb. 490.

Defendant complains that the trial court failed to submit his defense to the jury in any of the instructions given. What defendant terms his defense was that the asset, appearing under the name of the Lipman note, was carried in that name for convenience only, and that it represented a liability of the First National Bank on its indorsement on the back of the note. We think the real question is whether, in the making of the statement, there was an intent to deceive the bank examiner or the banking department. That question was fairly and fully submitted to the jury. We find no prejudicial error in the instructions given by the court, or in the court's refusal to give those requested by defendant.

Defendant complains because the trial court limited his cross-examination of the witness Lipman, in that he was not permitted to show on cross-examination that Lipman

was unfriendly to, biased and prejudiced against the defendant. The witness stated that he had nothing against the defendant, but, inferentially, that he was prejudiced against defendant's brothers. Then followed a series of questions, wherein it was sought to show that the witness had taken an active part in instigating the prosecution of defendant and working against him in various ways, and in employing others to work and testify against defendant. This evidence was excluded. Counsel for defendant stated that the only purpose of the evidence was to show the bias and prejudice of the witness, but he was not permitted so to do.

The Constitution guarantees to defendant in a criminal action the right to a fair and impartial trial. Whether he be innocent or guilty, this right must be accorded him. Lipman was a very material witness in the case for the prosecution. While he testified: "I haven't got nothing against Bert (meaning defendant)," questions propounded by counsel for defendant sought to elicit a series of acts, unfriendly and hostile to the defendant. Defendant was entitled to have disclosed to the jury the fact, if it existed, that the witness was biased and prejudiced against the defendant. Had it been so disclosed, a different verdict might have been reached. The defendant was denied the right to prove specific acts, tending to establish the bias and prejudice of the witness.

Under the facts disclosed by the record, we think it fairly appears that defendant's constitutional right to a fair and impartial trial was not accorded him.

It follows that the judgment should be and is reversed and the cause remanded for further proceedings.

REVERSED.