GEORGE DICKENS v. STATE OF NEBRASKA.

296 N. W. 869

FILED MARCH 7, 1941.  No. 30942.

*David D. Weinberg* and *Louis T. Carnazzo,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *Edwin Vail, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

YEAGER, J.

On December 9, 1939, a complaint was filed in the municipal court of the city of Omaha, Douglas county, Nebraska, wherein plaintiff in error, hereinafter referred to as the defendant, was charged as follows: "That George Dickens on or about the 8th day of December A. D., 1939, in the county aforesaid and within the corporate limits of the city of Omaha aforesaid, then and there being did unlawfully patrol, loiter about and picket by means of a banner carried by him on the street and sidewalk in front of the lawful place of business of the Central Storage & Van Company, 1101 Jackson street, Omaha, Nebraska, said sign bearing the inscription 'Central Van Unfair To Labor-General Drivers' Union Local 554 A F of L' with the intent of inducing and influencing others not to trade with, or have business dealings with said company thereby maliciously obstructing, interfering with and damaging the lawful business of said company, and said company itself with the intent of intimidating and threatening said company for the unlawful purpose of inducing and coercing said company to operate its business in a manner it may legally refrain from doing or to refrain from operating its business in the proper peaceful and lawful manner which it

may otherwise lawfully do, contrary to the statutes of the state of Nebraska, in such cases made and provided and against the peace and dignity of the state of Nebraska."

The defendant was tried in the municipal court, found guilty and sentenced to pay a fine. From the sentence so imposed he perfected an appeal to the district court for Douglas county, Nebraska.

On February 1, 1940, the defendant moved to quash the complaint, assigning various grounds in his motion. The motion was overruled. Following the ruling on the motion he demurred, assigning the same grounds as were the basis for his motion to quash. The demurrer was over-ruled. Following the ruling on the demurrer a motion to dismiss was made, assigning the same grounds as were set forth in the motion to quash and in the demurrer. This motion was also overruled. Thereafter on the same day the defendant was arraigned and pleaded not guilty. The case then proceeded to trial to the court, a jury having been waived, on the complaint originally filed in the municipal court, the substantial portions of which have been hereinbefore set forth.

On the trial of the case no witnesses were called to testify on behalf of either the state or the defendant. The evidence upon which the case was submitted for determination and decision was a stipulation of facts signed by the county attorney and his deputy on the one hand and the attorneys for the defendant on the other. The portion of the stipulation which is descriptive of the alleged violation of law and is the basis of the criminal prosecution herein is as follows:

"It is further stipulated and agreed that on the 9th day of December, 1939, the Central Van & Storage Company was a corporation duly organized and existing under and by virtue of the laws of the state of Nebraska, being located at 1101 Jackson street, in the city of Omaha, Nebraska, and there engaged in a lawful business and was the owner of the building in which said business was located; that prior thereto and on or about the 13th day of September, 1938, a labor dispute arose between the Central Van &

Storage Company and the General Drivers' Union Local 554, A. F. of L. and that at all times since said date said labor dispute has continued and still continues in effect; that on the 9th day of December, 1939, said company was operating its business and was using in the operation thereof nonunion men; that the defendant herein, George Dickens, a union truck driver and a member of the General Drivers' Union, Local 554, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers, and the American Federation of Labor, together with one other union member, did walk to and fro on the public sidewalk in front of the building of the Central Van & Storage Company, each carrying a banner, which banner was approximately 24x30 inches in size and which read as follows: 'Central Van & Storage Company Unfair to Labor-General Drivers' Union, Local 554, A. F. of L.,' a photostatic copy of which banner is hereto attached, marked exhibit 'A' and exhibit 'B', respectively.

"It is further stipulated and agreed that said walking to and from and bearing said banners was done at the instance of the General Drivers' Union, Local 554, a nonincorporated labor organization, the membership of which consisted entirely of local truck drivers, and some of the members of said Drivers' Union previous to the arising of said labor dispute had been employees of the Central Van & Storage Company, and other van and storage and transfer companies in the city of Omaha; that said walking to and fro and bearing said banners was for the purpose of acquainting the public with the fact that a dispute affecting labor existed between the Central Van & Storage Company and organized labor, and for the purpose of procuring said work for the union members; that previous to the labor dispute a relationship of employer and employee existed between the Central Van & Storage Company, and the defendant herein, and that there was a labor dispute in progress between the Central Van & Storage Company and its union employees.

"It is further stipulated that said walking to and fro,

bearing said banners, was done quietly, without physical force or violence and without threats thereof, nor did said defendant commit any act or acts tending thereto; that said walking to and fro, bearing banners, was maintained and carried on by said defendant and the other person named for the purpose of influencing and inducing truck drivers not to work for or deal with said company, and to advise and inform the public and persons seeking the services of the said Central Van & Storage Company, that the work being carried on by said Central Van & Storage Company was being done in a manner and under conditions deemed by said union to be unfair to organized labor and thereby seeking to influence and induce members of organized labor and the public generally to withhold their patronage from the said Central Van & Storage Company and not to trade with, buy from, sell to, work for, or have business dealings with said Central Van & Storage Company until the matters in dispute would be adjusted satisfactorily to said union.

"It is further stipulated that it was the further purpose of said defendant, and the other person named, to induce and coerce said Central Van & Storage Company to sign a collective bargaining agreement by and between the said company and said union, which agreement contained a schedule of union hours and wages; and which agreement said Central Van & Storage Company had refused to sign and was not willing to enter into; that as a result of the walking to and fro, by the defendant, in front of the business of the Central Van & Storage Company bearing said banners as aforesaid members of organized labor and other persons did withhold their patronage from the said company and did refuse to trade with, buy from, sell to, work for, or have business with said company; and the business of said company was thereby damaged and said Central Van & Storage Company and its business was thereby threatened; that the defendant and the other union member yielded peaceably to arrest."

The attempt was to charge a crime under section 28-813,

Comp. St. 1929, being one of the "picketing" provisions. This statute is the following:

"It shall be unlawful for any person or persons, singly or conspiring together, to loiter about, beset, patrol, or picket in any manner the place of business or occupation of any person, firm or corporation engaged in any lawful business or occupation, or any street, alley, road, highway or other place, in the vicinity where such person, firm or corporation may be lawfully engaged, in his, their or its work, business or occupation, for the purpose of inducing or influencing, or attempting to induce or influence, others not to trade with, buy from, sell to, work for, or have business dealings with such person, firm or corporation, so that thereby the lawful business or occupation of such person, firm or corporation will be obstructed, interefered (interfered) with, injured, or damaged and such person, firm or corporation thereby be induced or coerced against his, their or its will, intimidated, or threatened, to do something, he, they or it may legally refrain from doing, or to refrain from doing something, he, they or it may lawfully do."

The question for first consideration is as to whether or not the complaint charged a crime agreeable to the terms of this statute, since, as was well stated in *Dutiel v. State,* 135 Neb. 811, 284 N. W. 321, which was a prosecution under the statute in question in this case, "To charge a statutory offense, the information or complaint *must* contain a distinct allegation *of each essential* element of the crime as defined by the law creating it, either in the language of the statute or its equivalent."

In the opinion in that case (*Dutiel v. State, supra*) the elements necessary to a charge of crime under the statute were set forth specifically and for convenience by paragraphs. We quote them here:

"*To do certain acts,* which are: 'To loiter about, beset, patrol, or picket in any manner the place of business or occupation of any person, firm, or corporation engaged in any lawful business or occupation, or any street, alley, road, highway or other place, in the vicinity where such person,

firm or corporation may be lawfully engaged, in his, their or its work, business or occupation;'

"*With certain purposes,* which are: 'For the purpose of inducing or influencing, or attempting to induce or influence, others not to trade with, buy from, sell to, work for, or have business dealings with such person, firm or corporation;'

"*With certain results,* which are: 'So that thereby (1) the lawful business or occupation of such person, firm or corporation will be obstructed, interfered with, injured, or damaged, *and* (2) such person, firm or corporation *thereby* be induced or coerced against his, their or its will, intimidated, or threatened, (a) to do something, he, they or it may legally refrain from doing, *or* (b) to refrain from doing something, he, they or it may lawfully do.' "

An examination of the complaint and an analysis of the statute indicate that the complaint responds to that portion of the section segregated in the paragraph under the heading "*To do certain acts*;" also there was a response to that paragraph headed "*With certain purposes*;" and again there was a compliance with that portion of the paragraph headed "*With certain results*" and ending with the word "damaged." Examination further discloses that the complaint at no place and in no wise responds to that portion of the paragraph beginning with the numeral " (2) " in the paragraph headed "*With certain results.*" The nearest approach to this essential element of a charge under this statute is the following language found in the complaint: "With the intent of inducing and influencing others not to trade with, or have business dealings with said company thereby maliciously obstructing, interfering with and damaging the lawful business of said company, and said company itself with the intent of intimidating and threatening said company for the unlawful purpose of inducing and coercing said company to operate its business in a manner it may legally refrain from doing or to refrain from operating its business in the proper peaceful and lawful manner which it may otherwise lawfully do." This language indi-

cates only the intent and purpose which the defendant, "picketer," had in mind, or the result which he hoped would flow from his acts. This is not enough under the act. The act requires that the complaint shall charge, in addition, that such person, firm or corporation, as a result of the picketing, shall *"thereby* be induced or coerced against his, their or its will, intimidated, or threatened, to do something, he, they or it may legally refrain from doing, or to refrain from doing something, he, they or it may lawfully do." (Italics ours.) The complaint fails to charge either in the language of the statute or its equivalent that Central Storage & Van Company was either induced, coerced, intimidated or threatened.

In the light of the fact that the defect in the complaint was not one of technical procedure, the demurrer should have been sustained. *Dutiel v. State, supra.*

The demurrer was overruled .and a trial was had, as hereinbefore indicated, on a stipulation of facts. The trial resulted in a conviction and sentence of the defendant. An examination of the stipulation clearly indicates that, even if the complaint had been sufficient as to form and substance, a conviction was improper under the evidence.

The evidence fails to support a charge that the Central Storage & Van Company was induced, coerced, intimidated or threatened in any manner whatsoever. In fact, the stipulation of facts expressly negatives 'any such situation or condition.

The rule as announced in the decisions of this court which is controlling in this situation is as follows: "In this state all public offenses are statutory; no act is criminal unless the legislature has in express terms declared it to be so; and no person can be punished for any act or omission which is not made penal by the plain import of the written law." *Lane v. State,* 120 Neb. 302, 232 N. W. 96; *Dutiel v. State, supra.* The charge against the defendant, assuming the sufficiency of the complaint, was not sustained by the evidence.

In the municipal court, in the district court, and again

in this court the constitutionality of section 28-813, Comp. St. 1929, was presented. In the view we have taken of the complaint, and the evidence in support of the charge against the defendant, this question cannot now be properly passed upon or determined. This court recently announced the following rule which is in line with its previous holdings: "Before this court can rule on the question as to whether or not an act of the legislature creating a crime invades the constitutional rights of a person, it must be presented with a case where the issues and the evidence would support a conviction if the statute is valid." *Dutiel v. State, supra.*

For the reasons herein set forth, the judgment of the district court is reversed.

REVERSED.

CARTER, J., dissenting.

In my opinion, the question of the constitutionality of the anti-picketing law is properly before this court for decision in this case. Any other view presupposes that no case can properly be brought within its provisions. If the statute is so drawn that it can be made to serve no good purpose, litigants are entitled to this court's judgment to that effect. Likewise, if the law is constitutional, the court should so say for the benefit of those who desire to comply with the act if it meets constitutional requirements.

ROSE and PAINE, JJ., concur with the foregoing dissent.