CHARLES SEDLACEK, APPELLANT, V. STATE OF NEBRASKA, APPELLEE.

25 N. W. 2d 533

FILED DECEMBER 27, 1946. No. 32126.

*McKillip, Barth & Blevins,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *Homer L. Kyle,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and WILSON, District Judge.

SIMMONS, C. J.

Plaintiff in error, hereinafter called the defendant, was convicted of the crime of burglary and sentenced. He presents the case for review. We affirm the judgment of the trial court.

The information served on defendant October 17, 1945, charged that on May 12, 1945, in Saline County, he "did then and there willfully, maliciously and forcibly break and enter into a certain warehouse located on Lots numbered 21 & 22 in Block numbered 121 in the City of Crete, Saline County, Nebraska; that the said warehouse is leased, operated and occupied by William Howlett; with the intent of him, the said Charles Sedlacek, then and there to steal property of value contained in said warehouse," contrary to the statute, etc.

The statute provides: "Whoever willfully, maliciously and forcibly breaks and enters into any * * * warehouse. * * * with intent to steal property of any value, * * *." § 28-532, R. S. 1943.

By motion to quash made before arraignment, by demurrer ore tenus at the beginning of the trial, by motion at the close of the state's case in chief, by motion for a new trial, and by motion in arrest of judgment, defendant presented the contention that the information does not charge a crime under the laws of this state. The motions and demurrer were overruled. By his petition in error defendant presents the contention here. He contends that there is no sufficient allegation of ownership of the premises, and that the allegation that the property "is" leased, operated and occupied by William Howlett relates to the date of the information and not to the date of the alleged offense.

We consider this assignment of error in the light of established rules.

In this state all public offenses are statutory. Behrens v. State, 140 Neb. 671, 1 N. W. 2d 289.

" 'To charge a statutory offense, the information or complaint must contain a distinct allegation of each essential element of the crime as defined by the law creating it, either in the language of the statute or its equivalent.' " Dickens v. State, 139 Neb. 163, 296 N. W. 869.

"Where a statute states the elements of a crime, it is generally sufficient, in an information or indictment, to describe such crime in the language of the statute." Pandolfo v. State, 120 Neb. 616, 234 N. W. 483.

"* * * an indictment or information meets all constitutional requirements (1) if it shows that the acts which defendant is charged with committing amounted to a crime which the court had power to punish, and that it was committed within the territorial jurisdiction of the court, (2) if it informs the defendant of the nature of the charge against him, and (3) if it constitutes a record from which it can be determined whether a subsequent proceeding is

barred by the former adjudication. And to the third requirement, it cannot be said that the indictment or information alone must be full protection against double jeopardy, for the reason that in many cases, such as where several acts constitute a single crime, the defendant is often required to allege facts outside the record to support his plea of former adjudication. If the information or indictment apprises the defendant with reasonable certainty of the accusation against him so that he may prepare his defense and plead the judgment as a bar to a subsequent prosecution for the same offense, it meets the fundamental purposes of an information or indictment, as well as constitutional requirements." Cowan v. State, 140 Neb. 837, 2 N. W. 2d 111.

"No indictment shall be deemed invalid, nor shall the trial, judgment or other proceedings be stayed, arrested or in any manner affected * * * for any surplusage or repugnant allegation when there is sufficient matter alleged to indicate the crime or person charged; nor for want of the averment of any matter not necessary to be proved; nor for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits." § 29-1501, R. S. 1943.

The information here contains every element of the crime as defined by the statute. In addition, it contains the allegation by lot and block of the location of the warehouse in the city of Crete and the allegation that it "is leased, operated and occupied by William Howlett."

Is the ownership of the premises allegedly burglarized an essential element which must be charged in the information? The statute makes no such requirement. Defendant relies upon our decision in Winslow v. State, 26 Neb. 308, 41 N. W. 1116, wherein we said in the body of the opinion that "there must be an allegation of ownership" and in the syllabus: "In an indictment for burglary, it is necessary that the name of the owner of the building broken into should be given, and for this purpose the person in the visible occupancy and control of the premises, at the time

of the burglary, may be set out as the owner, whether he be the owner of the title or a tenant." However, it is to be noted that there the state conceded that "in an indictment or information for burglary, the name of the owner of the building must be stated with reasonable certainty," and the question actually decided was that ownership should be alleged in the one in lawful possession of the premises. So the question here presented, while stated in the Winslow case, was not actually in controversy there. See, also, Hahn v. State, 60 Neb. 487, 83 N. W. 674, where the rule as to alleging ownership was accepted as a premise for the opinion.

The rule stated in the Winslow case is in accord with the earlier texts. See Maxwell, Criminal Procedure (2d ed.), Ch. XIII, p. 104; 1 Bishop, Criminal Procedure (3d ed.), § 573, p. 353, and § 581, p. 356; 3 Chitty, Criminal Law (5th. Am. ed.), Ch. XVI, p. 1109. However, the more recent texts state the rule as follows: "Except in so far as may be changed by statute, an indictment for burglary, whether at common law or under a statute, must allege the ownership of the dwelling house or other building broken and entered, if known, or it will be fatally defective. * * * There is some authority, however, to the effect that if the building is otherwise sufficiently identified, an allegation of ownership is not necessary." 9 Am. Jur., Burglary, § 48, p. 263. See, also, 12 C. J. S., Burglary, § 38, p. 698; Annotation, 20 A. L. R. 510; 2 Wharton, Criminal Law (12th ed.), § 1037, p. 1321.

We examine the history and purpose of the rule to determine whether or not the protection of the substantial rights of the defendant upon the merits requires an adherence to the rule of criminal pleading stated in the Winslow case.

It appears that at common law the definition of the common-law crime of burglary involved the elements of time, place, manner, and intent. 2 Cooley's Blackstone (4th ed.),

p. 1383; 3 Chitty, Criminal Law (5th Am. ed.), Ch. XVI, p. 1101.

In the common-law indictments for burglary, in charging as to the place, it was held essential that it be alleged that the defendant broke and entered the "dwelling house of another." 1 Bishop, Criminal Procedure (3d ed.), § 573, p. 353. The purpose of the rule, as hereinafter set out, that the name of the owner of the property should be stated as descriptive of the place was overlooked and in practice it became a requirement that ownership be stated as a substantive part of the offense itself. It became necessary to inquire then into who was an owner for that purpose and that presented many problems. To remedy the difficulty experienced in describing ownership where the dwelling belonged to numerous partners or adventurers in an unincorporated company, the statute 1 Geo. 4, c. 102 was enacted providing that the house may be described as the property of any one of the partners, company, or adventurers without naming all. 3 Chitty, Criminal Law (5th Am. ed.), Ch. XVI, p. 1112. This statute was designed to relieve the rigors of the common-law rule, and may be the ancestor of our section 29-1507, R. S. 1943. This section sets out what shall constitute a sufficient allegation of ownership when an offense shall be committed upon or in relation to any property belonging to several partners or owners, but it does not make such an allegation an essential element in charging the crime of burglary under section 28-532, R. S. 1943.

It appearing that the allegation found its way into the common-law indictment as a part of the allegation as to the place of the offense, it becomes material to examine as to its purpose and to determine whether under our code procedure it is a necessary allegation, bearing in mind that the crime of burglary under our act is greatly enlarged over the common-law crime as to the place where the crime may be committed.

Maxwell in his Criminal Procedure states: "The object is to describe the place where the offense was committed, not to determine the ownership of the property. Ownership as against the burglar means any possession which is rightful." Maxwell, Criminal Procedure (2d ed.), Ch. XIII, p. 104. This statement is cited with approval in Hahn v. State, *supra*. The purpose is stated in 9 Am. Jur., Burglary, § 48, p. 263, as follows: "There are only two reasons for requiring the ownership of the house to be stated in an indictment for burglary: (1) For the purpose of showing on the record that the house alleged to have been broken into was not the dwelling house of the accused, inasmuch as one cannot commit the offense of burglary by breaking into his own house, and (2) for the purpose of so identifying the offense as to protect the accused from a second prosecution for the same offense." Likewise, in 12 C. J. S., Burglary, § 38, p. 699, it is stated: "* * * such allegation being required for the purpose of showing on the record that the structure alleged to have been entered was not the property of accused and also for identifying the offense so as to protect him from a second prosecution therefor."

The specific ownership of a building involved in the crime of burglary is not an essential element of the offense. An allegation of the ownership as such is immaterial save for the purpose of identifying the property, where the crime allegedly was committed, as not the property of the accused and to show that the defendant had no right to enter the premises. State v. Knizek, 192 Wash. 351, 73 P. 2d 731; State v. Klein, 195 Wash. 338, 80 P. 2d 825; People v. Price, 143 Cal. 351, 77 P. 73; People v. Redman, 39 Cal. A. 566, 179 P. 725; State v. Moreno (Ariz.), 168 P. 2d 237; State v. Bull, 47 Idaho 336, 276 P. 528; State v. Wilson, 36 S. D. 416, 155 N. W. 186; State v. Toliver, 109 Kan. 660, 202 P. 99, 20 A. L. R. 502.

Accordingly, we hold that under section 28-532, R. S. 1943, if the information for burglary sufficiently identifies the building allegedly entered, an allegation of owner-

ship is not necessary in order that an offense under the statute be stated. Winslow v. State, *supra,* accordingly is overruled to the extent indicated.

In the light of this holding we examine the information to determine whether or not the allegation as to place is sufficient. It names a warehouse and gives its location by lot and block number in the city of Crete. In addition, as further information to the accused, it advises him that it is the warehouse on those lots then leased, operated, and occupied by William Howlett. The need for a further identification of the warehouse does not appear necessary. If it be argued that the information does not charge that the property was not that of the accused and that he had no right to enter the premises, then we answer, as did the Supreme Court of Kansas in State v. Toliver, *supra,* that the information alleged that the breaking and entering was done willfully, maliciously, and forcibly, and that was sufficient to advise the accused that the state alleged that the warehouse did not belong to him, and that his entry was unlawful and felonious.

The assignment of error is not sustained.

It appears that the instant case was the only one set for trial at that jury term, although there were others for trial to the jury panel. On the morning that the trial began a member of the jury panel rode from Friend to Wilber with the county attorney. He later became a juror in this case. He had previously been a client of the county attorney, and of the counsel for defendant. He knew that he was going for possible jury service, but did not know what case was to be tried. Nothing was said to him about the case that was for trial. The matter was first raised upon the motion for a new trial. Defendant assigns this as the granting of a favor to the juror requiring a new trial. Defendant relies upon Ensign v. Harney, 15 Neb. 330, 18 N. W. 73, and similar cases from other jurisdictions, wherein favors granted to jurors during the progress of the trial were held to vitiate the verdict. See 23 C. J. S., Criminal Law, §

1449, p. 1209; 53 Am. Jur., Trial, § 900, p. 646; Annotation, 55 A.L . R. 750; 2 Thompson, Trials (2d ed.), § 2564, p. 1845. The reason behind the rule is that the conduct of judicial proceedings must be kept not only free from wrong but free of the suspicion of wrong. The cases cited and the present case are distinguishable in that the favor here was granted to a prospective juror. In the absence of any suggestion of prejudice in fact, we see no reason for extending the scope of the rule so as to include favors innocently granted to prospective jurors. See Perry v. State, 38 Okl. Cr. 202, 259 P. 657; Williams v. State, 26 Ala. A. 531, 163 So. 663.

Defendant next assigns error in that the trial court limited the cross-examination of the state's witness to show bias and prejudice and excluded evidence offered by the defendant for the same purpose.

The rule is: "Defendant in a criminal action has a right to inquire of a state witness whether he is biased and prejudiced against the defendant, and if the witness answers in the negative defendant has a further right to inquire into specific acts of the witness, tending to disclose such bias and prejudice." Flannigan v. State, 124 Neb. 748, 248 N. W. 92.

The trial court permitted the state's witness to testify on cross-examination that there had been ill will between the witness and defendant. It was obvious from the answers that such ill will continued. The court likewise permitted the defendant to testify that there was ill will between him and the state's witness arising out of the charge that the state's witness had taken property of defendant during a scrap drive. The court refused to permit the defendant to testify as to all the circumstances of the event in question. The trial court did not err in its rulings.

Defendant complains of the admission of an iron bar in evidence on the ground that it was not properly identified. The sheriff testified that on the morning after the alleged offense, he went to the warehouse and found bar marks on

the door; that he and another person looked for a tool that might have caused the marks, looked in defendant's car in front of the warehouse, found a bar, which fitted perfectly into the marks on the door, on the front cushion of the car; that the bar had since been in his possession and was in the same condition as found. The bar was admitted in evidence over objection as to foundation. Subsequent thereto a witness for the state testified that defendant's car was parked in front of the door of the warehouse; that he saw defendant go to his car, then go to the warehouse door with a bar and pry it open, take the bar back and put it in his car, and then enter the warehouse. The exhibit went directly to the question of the breaking. Although we think it would have been better practice to have withheld the offer until all the foundation evidence was in, it is patent that the admission of the exhibit in evidence was proper. 12 C. J. S., Burglary, § 51, p. 724; 22 C. J. S., Criminal Law, §§ 710 and 712, pp. 1206, 1207; Annotation, 143 A. L. R. 1199; State v. Crawford, 59 Utah 39, 201 P. 1030.

Defendant contends the court erred in the admission of a photograph in evidence. The picture shows a stack of sacks of oyster shells in one corner of the warehouse. It shows a state's witness in front of the sacks with a yardstick in his hand, obviously indicating the height of the stack of sacked material. The objection made at the time of the admission of the picture was that there was no proper connection between the conditions of the room at the time of alleged entry and the conditions shown in the photograph. The picture was taken the morning following the events in question. The evidence is that it represented the condition of the sacks as they were on the night of the alleged burglary. After the admission of the exhibit, the state offered evidence that the defendant was found lying on his stomach on top of this pile of sacks. It now is claimed that the only purpose of the exhibit was to inflame the passions of the jury. We observe nothing in the picture:

that does so. It does aid the jury in understanding the evidence. While we think it would have been better to have withheld the offering of the exhibit until all the evidence was in concerning it, we see no prejudicial error in its admission.

Defendant next complains that the county attorney in certain of his questions to two of the state's witnesses, and one of them in his answers, assumed that there had been a breaking and entry. We have examined each of the questions and answers to which our attention is directed. The defendant made no objection at the time. He is not now in a position to complain. Clark v. Folkers, 1 Neb. (Unof.) 96, 95 N. W. 328.

On his cross-examination as a witness in his own behalf, the defendant was asked if he had not been convicted of a felony in the State of Nebraska prior to May 12, 1945. He replied, "Yes." He was asked, "What is the answer?" and again replied, "Yes." He then was asked if he had not been convicted of two felonies in the State of Nebraska, to which he answered, "I was paroled." Objection was made to the form of the question. The witness volunteered, "Why throw all that dirt on me?" The court sustained the objection to the form of the question, but no motion to strike was made. Defendant again was asked if he had not been on two occasions convicted of felonies in the State of Nebraska. He answered, "Let me ask you a question." Both the court and his counsel instructed him to answer the question. He replied, "I was paroled once." The county attorney then stated that the question was not answered, moved that the answer be stricken, and asked that the question again be read. The question and answer were read. The court stated, "You may ask the question." Defendant's counsel then said he thought the rule was that the question could be asked, but he wanted to make objection for the purpose of the record. The court instructed him to make the objection. He did so. The court then sustained the objection as to form and stated that the witness could be

asked how many times he was convicted of a felony. De-
fendant was asked that question. Objection was made and
overruled. Defendant answered, "Well, I was convicted
once and paroled once." He then was asked, "You were
then convicted twice?" and replied, "I answered it." Counsel
objected to the question, objection was overruled and de-
fendant stated, "I answered him on it." His counsel ob-
jected that the question was a repetition, the objection was
overruled, and the witness instructed to answer the ques-
tion. His counsel then injected, "He told you twice," and
the defendant stated, "I told him twice." The court said,
"No. He says that he was convicted once and paroled
once," and the witness volunteered, "I don't know why I
have to throw that in here." The court then said that he
had been asked the question and objection to the form of it
had been sustained, and instructed the witness to answer
the question if he could. Defendant stated, "I told him
twice. I told him two different times. How many time do
I have to answer it? How many times does he want it? I
am trying to talk United States." The county attorney
moved to strike the answer. No ruling is shown on the
motion. Nothing further appears as to that matter.

Defendant contends there was prolonged interrogation
on this matter, constituting prejudicial error.

The statute is: "A witness may be interrogated as to his
previous conviction for a felony, but no other proof of such
conviction is competent except the record thereof." §
25-1214, R. S. 1943.

In Johns v. State, 88 Neb. 145, 129 N. W. 247, we said:
"The defendant complains because he was asked on cross-
examination whether he had not been twice convicted of a
felony. The witness admitted he had been convicted once,
but evaded the question with respect to the second convic-
tion, and finally said the second time he pleaded guilty. It
then became necessary for the state to show that a judg-
ment had been entered on that plea, else the prosecutor
could not lawfully ask the jury to consider the defendant's

testimony in the light of the fact that he had twice been convicted of a felony. Marion v. State, 16 Neb. 349, 360. But nine questions were asked upon this subject, and seven of them were made necessary by the defendant's equivocation. We find nothing in the record to indicate a departure from a correct rule of practice with respect to these questions." In the syllabus we said: "If the defendant testifies in his own behalf, the county attorney may, on cross-examination, ask him whether he has been convicted of a felony, and, if the witness equivocates in his answer, the prosecutor may ask such additional questions as may be reasonably necessary to bring out the fact of that conviction." It is applicable here.

In Sulley v. State, 119 Neb. 783, 230 N. W. 846, we held that the statute did not prevent a proper inquiry as to the number of convictions.

We see no merit in the assignment of error.

During the cross-examination of a witness for the defendant, a juror spoke up and said: "I wonder if anyone isn't in the witness chair, should they do any signaling or anything? I saw someone signaling to the witness." The court said: "That is for you to observe yourself." The juror asked, "And not do anything about it?" The court replied, "Of course." The defendant made no request for an investigation, asked no instruction, cautionary or otherwise. He now asserts that this was misconduct of the juror requiring a new trial.

The rule is stated: "An objection to the misconduct of a juror in expressing an opinion or prejudice during the trial, if known to the party at the time of its occurrence and not made the subject of a motion to the court, is waived, as the party will not be permitted to speculate upon the chances of a verdict." 39 Am. Jur., New Trial, § 77, p. 91, citing Beckman v. Lincoln & N. W. R. Co., 85 Neb. 228, 122 N. W. 994. The assignment is without merit.

Defendant asserts error in the rulings of the court in sustaining objections to questions asked of witnesses by him.

He touches upon nine such rulings in his argument. It is not necessary to discuss them. We have examined the record as to each of them and find no prejudicial error.

Defendant assigns as error some 14 different instances of remarks made by the trial court during the examination of witnesses. We have considered them all. They were confined to orderly procedure, to the proper ascertainment of issuable facts, to the exclusion of inadmissible or unnecessary testimony, and to the observance by counsel of recognized rules of evidence and procedure. See South v. State, 111 Neb. 383, 196 N. W. 684. We find no prejudicial error.

Defendant's next assignment of error arises as a result of this factual situation. At 5:17 p. m. on March 13, 1946, the jury was instructed and retired for their deliberations. At 10:20 p. m., the jury returned to the jury box. The defendant was present in person. The jury requested that certain of the testimony be read to them. The court advised the jury that the attorneys had agreed that the jury could go home and return the next day for further deliberation. A majority of the jury expressed a desire that they be permitted to go home. The court then gave them a cautionary instruction against talking with or permitting anyone to talk to them about the case, and not to discuss it among themselves and not to form or express an opinion about the case until they reconvened. They then were permitted to separate to reconvene at 10 a. m. the following morning. On the following morning the jury reconvened, the reporter read the testimony of two witnesses and the jury retired for further deliberation at 11:50 a. m., and returned at 1:49 p. m. with their verdict.

On motion for a new trial defendant made affidavit that he was not consulted with reference to permitting the jury to separate, although he was in the court room, and that he did not give his attorney authority to consent or have knowledge that it was given. The jurors made affidavit that they had strictly conformed to the caution given them.

It appeared from testimony taken that the consent of defendant's counsel was given over the telephone, the counsel not being present. The journal entry recites that it was agreed by the defendant in person and by his attorney and by the county attorney that the jurors should be allowed to separate for the night. The bill of exceptions shows that the jury was permitted to separate with the agreed approval of the counsel for defendant; no objection by defendant is shown; and no objection to the separation was made when the court reconvened the following morning; and none until the motion for a new trial was submitted.

Defendant now contends that the court erred in permitting the jury to separate after the case was submitted. He bases his contention upon the provisions of section 29-2022, R. S. 1943, which is as follows: "When a case is finally submitted to the jury, they must be kept together in some convenient place, under the charge of an officer, until they agree upon a verdict or are discharged by the court. The officer having them in charge shall not suffer any communication to be made to them, or make any himself, except to ask them whether they have agreed upon a verdict, unless by order of the court; nor shall he communicate to anyone, before the verdict is delivered, any matter in relation to the state of their deliberations. If the jury are permitted to separate during the trial, they shall be admonished by the court that it is their duty not to converse with or suffer themselves to be addressed by any other person on the subject of the trial, nor to listen to any conversation on the subject; and it is their duty not to form or express an opinion thereon until the cause is finally submitted to them."

The statute requires the nonseparation of the jury after the case is submitted to it as a protection to both the State and the defendant. Clearly the defendant had the right to have the jury kept together after final submission until it agreed upon a verdict or was discharged by the court. The precise question here is, can that right be waived? We think it is within the classification of those rights that can be waived, and that the defendant by the

consent of his counsel, which he knew was given, by his silence and acquiescence, and by his failure to raise the question when the court reconvened, waived the right to have the jury kept together. Henning v. State, 106 Ind. 386, 6 N. E. 803; Keith v. Commonwealth, 195 Ky. 635, 243 S. W. 293; Whitfield v. State, 45 Okl. Cr. 397, 283 P. 266; Powell v. Commonwealth, 182 Va. 327, 28 S. E. 2d 687.

In the early case of Polin v. State, 14 Neb. 540, 16 N. W. 898, it was claimed that in disobedience of an order that the jury be kept together, they did in fact separate and three of them engaged in conversation with bystanders. We there said: "This was known by the prisoner's counsel, and probably by the prisoner himself at the time it occurred, yet no complaint was made to the judge, but the trial was permitted to proceed without objection until after verdict.

"Although it is abundantly shown by the affidavits of the jurors themselves, and of the persons with whom they conversed, that nothing at all improper was said or done by either of them during the separation, even without this we are of opinion that under the circumstances no just ground of complaint is shown. The objection first appeared in the motion for a new trial, and came too late. If the separation were thought to be at all prejudicial to the prisoner, it ought to have been brought to the notice of the judge at once, upon discovery, so that an investigation could have been made, to the end that without further fruitless expense, if justice required it, the trial could have been stopped, that the jury discharged, and a new one impaneled to try the case.

"Parties litigant, even defendants in criminal cases, must deal fairly by the court. They are not permitted to withhold information of matters transpiring in the progress of a trial, whether prejudicial or otherwise, and thus, without objection, permit it to proceed to a conclusion, and then take advantage of them. Generally all objections not jurisdictional as to the subject of the litigation must be made at the first opportunity, or they are deemed to be waived. The rule in such cases is, that a party shall not be

permitted without objection to take the chances of a favorable result, and then, if disappointed, for the first time complain."

The reasoning there used is applicable here. The assignment is not sustained.

As stated above, after the jury had retired for its deliberations, it came back into the jury box and requested that the testimony of two of the State's witnesses be read to it. That request was complied with and the testimony of the witnesses was read to the jury. The defendant was present in court. It is shown in subsequent proceedings that defendant's counsel was not present, but that counsel was absent at his own request and at his home in another county under circumstances that show approval of both defendant and court; and that counsel had knowledge of the jury's request and the court's intention to comply therewith in ample time to have been present in court, had he so desired. No objection was made to the reading of the testimony. The defendant assigns the reading of this testimony as prejudicial error. The contention is fully answered in Duffey v. State, 124 Neb. 23, 245 N. W. 1. The assignment is without merit.

Defendant further assigns as error the refusal of the trial court to direct a verdict of not guilty at the close of the State's case on the ground that there was not sufficient competent evidence to sustain a verdict of guilty, and that when all the evidence is considered, it is insufficient to prove defendant's guilt beyond a reasonable doubt. This contention seems to boil down to this: (1) There was no sufficient evidence that defendant forcibly entered the building (2) with intent to steal anything of value.

The State offered evidence that the warehouse was used for the purpose of storing animal feeds and other items of merchandise; that it was not otherwise used; that it had no artificial lights; that it had one outside door which was locked about 5:30 p. m. on the evening in question; that about 10 p. m., the defendant's car was parked in front of the warehouse door; that defendant had a machine

shop nearby; that defendant came across the street with a bar in his hands, used it to force open the door, placed the bar in his car, and returning entered the building; that shortly he was seen near the door with a sack of merchandise in his hand; that he put down the sack and retreated into the building; that the witness to these events went for assistance and shortly with another witness entered the building, and aided by a flashlight found defendant lying on a stack of sacked merchandise near the ceiling in the rear of the building; that defendant resisted detention; that an officer was called and defendant placed in arrest; that the door showed marks of being forced open; and that a bar that fitted in to the marks on the door was found on the seat in defendant's car.

Defendant testified that he went to the building that evening to try to sell some pigs to an employee of the tenant; that the door was open; that he entered and found the State's witness there; that the State's witness' truck was parked outside; and that the State's witness was in fact the wrongdoer who, being caught, tried to shift the crime to defendant.

The most that can be said with reference to defendant's contention is that the evidence presents questions of fact for the determination of the jury. Without reviewing it further, we deem it ample to sustain the verdict of the jury.

During the argument to the jury the county attorney said that certain witnesses had had words put in their mouths as to what they were to testify to in the trial. Counsel for defendant objected and alleged "prejudice and misconduct." The court said, "Overruled. It is a conclusion that you can draw." The argument then proceeded. Counsel argues that the court told the jury that that was the court's conclusion, and that prejudice resulted. Defendant did not ask for an instruction that the alleged statements should be disregarded nor did he move for a mistrial. He was content to have a record made of the statements. He then proceeded to take his chances with the jury as to the outcome. Considering the nature of the statements and the

circumstances that exist here, we are of the view that he has waived his right to complain; and that, having taken his chances of an adverse verdict, he cannot now use this situation as a means of securing a second chance before a jury. Dobry v. State, 130 Neb. 51, 263 N. W. 681.

Defendant complains of error in the giving of certain instructions. By instruction No. 3 the court told the jury "* * * that the material allegations and elements necessary to be established by the evidence, beyond a reasonable doubt, in order to convict the defendant of the crime charged in the information are:

"1. That the defendant Charles Sedlacek did on or about the 12th day of May 1945, willfully, maliciously and forcibly break and enter into a certain warehouse located on Lots 21 and 22 in Block 121 in the City of Crete, Saline County, Nebraska.

"2. That said warehouse is leased, operated and occupied by William Howlett.

"3. That said breaking and entering was with intent to steal property of value therein contained.

"4. That said crime was committed in Saline County, Nebraska."

The first complaint of the instruction is that the court, having told the jury of the material allegations and elements necessary to be established in order to convict the defendant, should also have told the jury that if the State failed to prove one or more of the material allegations and elements, then its verdict should be for the defendant. The court told the jury the elements that had to be proved. In the next instruction it told the jury that the burden was on the State to prove guilt beyond a reasonable doubt, and that if the jury was not satisfied beyond a reasonable doubt, it should acquit. We see no prejudicial error in the instruction, nor merit in the assignment.

The next criticism of the instruction is that in elements 3 and 4 the court assumed that there had been a breaking and entering and assumed the commission of a crime, and the court should have used the words, "alleged breaking

and entering" and "alleged crime," and that this constitutes prejudicial error.

In Zediker v. State, 106 Neb. 473, 184 N. W. 80, we held: "* * * * it is reversible error for the court to assume in the instructions that the corpus delicti, or any fact necessary to establish the guilt of the accused, has been proved, and so relieve the jury from its consideration, unless the same is expressly or tacitly admitted by defendant."

The obvious answer is that the court did not assume the existence of any element and did not relieve the jury of the consideration of any element necessary to establish the guilt of the defendant. The instruction clearly told the jury to determine whether or not the defendant did willfully, maliciously, and forcibly break and enter the warehouse. If it found that he did not, then obviously that ended the matter. But if it found that there had been the breaking and entering as alleged, then they must determine whether or not that breaking and entering was with intent to steal property of value contained in the warehouse. If it found that element had been proved, then the crime defined by the statutes had been proved. Having determined the commission of the crime by the defendant, it was next required to determine whether or not it was done in the County of Saline. We see no prejudicial error in the instruction, and no merit in the assignment.

The giving of instructions numbered 6 and 7 is assigned as error. Instruction 6 advised the jury as to what constituted a breaking and entering, and number 7 dealt with the requisite proof as to intent. In each of these instructions, the court used the clause, "with the intent to steal property," omitting the words "of any value." It will be noted that in instruction number 3 the court included "of value." The argument is that it was prejudicial error to omit it in the two following instructions. In instruction number 14 the court instructed the jury that the instructions "must be considered as a whole, as there has been no attempt to cover all of the law in any one instruction."

In Nanfito v. State, 136 Neb. 658, 287 N. W. 58, we said: "Where instructions, considered as a whole, state the law fully and correctly, error will not be predicated therein merely because a separate instruction, considered by itself, might be subject to criticism." Where the charge to the jury, considered as a whole, correctly states the law, the verdict will not be reversed merely because a single instruction, when considered separately, is incomplete. Norton v. State, 119 Neb. 588, 230 N. W. 438.

Considering the clear statement in instruction number 3 and the purpose of instructions numbered 6 and 7, we find no basis for a determination that the jury could have been misled or confused by the instructions. We find no prejudicial error in the instructions criticized.

Defendant assigns as error the failure of the trial court to instruct the jury that evidence of a previous conviction of the accused of a felony is to be considered only as affecting his credibility as a witness and is not to be considered as tending to prove the crime charged. Defendant made no request for such an instruction. The trial court instructed the jury that it was the sole judge of the credibility of the witnesses and of the weight to be given their testimony. The court likewise instructed the jury that the defendant was a competent witness in his own behalf and that the jury was the judge as to the weight to attach to his testimony. No objection is made to the instructions given. This assignment is answered in Jones v. State, *ante* p. 219, 22 N. W. 2d 710, wherein we held: "The rule is well established that it is the duty of the court to instruct the jury on the law of the case, whether requested so to do or not; and an instruction or instructions which, by the omission of certain elements, have the effect of withdrawing from the consideration of the jury an essential issue or element of the case, is erroneous; but where the jury is instructed generally upon the law, and when the instructions given do not have the effect above stated, then error cannot be predicated upon the failure of the court to charge upon some particular phase of the case unless a proper in-

struction was requested by the party complaining." See, also, Lee v. State, *ante* p. 333, 23 N. W. 2d 316.

Defendant claims that the court erred in not granting a new trial on the ground of newly discovered evidence. The only showing deemed worthy of mentioning is that one of the state's principal witnesses, nine days after the jury's verdict, pleaded guilty to the issuance of a no-fund check and was sentenced to serve a period of one year in the State Reformatory. It appears to be the theory of the defendant that if he could secure a new trial, the credibility of this witness would then be in serious question because of his conviction for a felony. When the affidavit showing the plea was offered, defendant's counsel said, "It is probably the stretch of imagination to call it newly discovered evidence." The trial court evidently so considered it. We agree with counsel for defendant.

The trial court sentenced the defendant to be confined in the penitentiary for a period of five years. Defendant contends that this sentence is unwarranted and excessive. We are requested to reduce it under the provisions of section 29-2308, R. S. 1943. The record, made before sentence was passed, shows not only the two felonies to which reference has been made herein, but also other offenses relating to property. We see no reason for reducing the sentence of the trial court.

The judgment of the district court is affirmed.

AFFIRMED.