PAUL BEADS, ALIAS PAUL BEADES, PLAINTIFF IN ERROR, V.
STATE OF NEBRASKA, DEFENDANT IN ERROR.

71 N. W. 2d 86

Filed June 10, 1955. No. 33656.

*Joseph M. Lovely, Adolph Q. Wolf,* and *Thomas J. Walsh,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, *Clarence A. H. Meyer,* and *Homer G. Hamilton,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ., and KOKJER, District Judge.

CARTER, J.

The plaintiff in error was charged with holding up Robert O. L. Sutherland with a gun on December 15, 1953, and forcibly taking money from him, which belonged to Miller and Holmes, Inc., with the intent to rob and steal. The jury returned a verdict of guilty, and a sentence of 12 years in the Nebraska State Penitentiary was imposed. Plaintiff in error, whom we shall hereafter refer to as the defendant, brings the case to this court on error.

The evidence of the State shows that Robert Suther-

land was employed as a service station attendant at the M & H Gasoline Station at Fortieth and Dodge Streets in Omaha, Douglas County, Nebraska, on December 15, 1953. On or about 6 a. m. of that day while he was alone at the station, two men drove up in a dark colored automobile. As he walked out of the office and around the front of the car the man who had been seated on the right side of the front seat pulled a gun and ordered him to hand over all the money he had on him, which he did. He was ordered to open the cash box in the station and all the cash was taken therefrom by the two men. In excess of $100 was taken. The two men then drove away. Sutherland immediately called the police and in a matter of minutes two detectives were at the scene of the holdup. He described the two holdup men to the police. One of the two detectives went to the police station and returned with the photographs of seven men. Defendant identified the two men from this group. He also identified the two men at the police station the next morning as the two who held him up and identified the defendant as the man who held the gun on him at the time of the robbery. Neither of the men wore masks. The station was well lighted, and the defendant was positively identified by Sutherland.

As a defense defendant attempted to prove an alibi and mistaken identity. Defendant testified that he had lived with his mother for some months prior to December 15, 1953. He testified that at 11 p. m. on the night of December 14, 1953, he was drinking beer in the Royal Flush Bar at Sixteenth and California Streets in Omaha, in the company of Gloria Jenkins, Gladys Ramsey, Joe Bevins, and George Bevins, the latter being his alleged accomplice, until about 1 a. m. They left and went to the Junior Bar for one drink and then proceeded to the Town House Cafe in East Omaha where they ate and drank until about 5 a. m. He claims he was let out at his mother's apartment about 5:25 a. m.,

that a roomer answered the bell and let him in the front door, and that his mother then admitted him to her apartment. He says he remained there until shortly before he was picked up by Lieutenant Pike of the police force about 9:30 a. m. He testified also that his hair was black, that he had it dyed in August 1953, and that it had streaks of yellow, red, and orange through it at the time of his arrest. That his hair had dye streaks in it is corroborated and not questioned in the evidence. The purpose of this evidence was to impeach the testimony of Sutherland that his hair was dark. The defendant admitted on direct examination that he had twice previously been convicted of a felony.

The State on rebuttal produced Lieutenant Pike who testified that after arresting and interviewing defendant he went to the home of defendant's mother. He testified that she told him defendant had not been to her place since the Saturday before. This evidence directly contradicted that of the defendant's mother who had corroborated his story that he was at her home during the time of the robbery.

The statements in the evidence of defendant and his witness Gloria Jenkins who was with him at the Town House Cafe as to the time he left them were approximations. The jury could have found from their evidence, as it evidently did, that there was ample time thereafter for defendant and George Bevins to have driven to the scene of the holdup. The evidence of defendant and his mother as to his whereabouts at 6 a. m. was positively disputed by Sutherland. The evidence of defendant's mother was impeached by Lieutenant Pike. There was sufficient evidence to go to the jury on the matter of defendant's guilt or innocence. The defendant assigns as error certain matters which occurred at the trial which are alleged to have been prejudicial to the rights of the defendant.

The defendant assigns misconduct on the part of the prosecuting attorney as a ground for reversal. The

alleged misconduct consists of two separate acts on the part of the prosecutor. It is claimed to be misconduct of counsel when the State offered in evidence a flashlight and a jumper wire found on the defendant when he was arrested. The flashlight was admitted in evidence and objections to the jumper wire were sustained. The admission of the flashlight in evidence was not prejudicial to the defendant, although it did not tend to prove an issue in the case. No objection to the conduct of the prosecutor is shown by the record on this point. The second claim of misconduct is grounded on an incomplete answer to a question asked of the chief of police. He was asked if pictures were taken of every suspect taken to the police station. The answer was in the negative. This question was then asked: "What particular ones do you take?" Objection was made and overruled. The answer was: "We take those of outstanding criminals and the ones that are most likely to be ———." The answer was interrupted by defense counsel, who moved that the answer be stricken. The prosecutor consented. The court sustained the objection and struck the answer. Another counsel for the defendant then moved for a mistrial because of the incomplete statement made by the chief of police. The court overruled the motion. Defense counsel then moved "that not only the answer be stricken out but that the jury be instructed to disregard it." The court sustained the motion and instructed the jury to disregard the incompleted answer of the chief of police. We find nothing in the recited incident amounting to misconduct of counsel. No objection was made on that ground. The trial court did not err in denying a mistrial. The motion to strike was sustained and the jury was directed by the trial court to disregard the statement as requested by defendant's counsel. The trial court correctly ruled on the matters presented and properly complied with defendant's request that the jury be instructed to disregard the statement of the chief of police. The rights of

the defendant were fully protected by the remedial action taken by the trial court. Defendant asserts that the prosecuting attorney was guilty of misconduct in his argument of the case to the jury. The record discloses that defendant made an objection at the time. The objection was overruled. Defendant did not ask for a mistrial. He accepted the ruling and proceeded to take his chances with the jury on the outcome.

The rule governing misconduct of counsel is: One may not complain of misconduct of adverse counsel if, with knowledge of that misconduct, he does not ask for a mistrial but consents to take the chances of a favorable verdict. Sedlacek v. State, 147 Neb. 834, 25 N. W. 2d 533, 169 A. L. R. 868; Millslagle v. State, 138 Neb. 778, 295 N. W. 394.

The defendant assigns as error certain remarks made by the trial judge during the trial. No objection was made thereto at the trial. It is the rule that unless the record discloses an objection or an exception to remarks of a trial judge a complaint with regard thereto cannot be reviewed on appeal. Morrow v. State, 146 Neb. 601, 20 N. W. 2d 602; Hyslop v. State, 159 Neb. 802, 68 N. W. 2d 698.

The defendant assigns as error the admission of a colored transparency of the defendant into evidence, which was taken of the defendant after he was taken into custody. Sutherland testified that the man who held the gun on him had black hair. Defendant testified that he had dyed his hair in August and that there were red streaks in it at the time of his arrest. The chief of police saw the red streaks in defendant's hair and also testified when the transparency was exhibited to the jury that they could not be seen in the picture. Many pages of evidence were put in the record concerning the technical processes of colored photography, evidently for the purpose of showing that it did not accurately reproduce the color streaks in his hair; this, even though it had been admitted by the identifying

witness that the exhibit did not show the streaks. The picture was admitted for the purpose of showing the appearance of the defendant when he was taken into custody. It gave the jury an opportunity to compare defendant's appearance with the description given by Sutherland of the man who robbed him. There was no error in the admission of the transparency.

We have examined the other assignments of error made by the defendant and we find them to be without merit. We find no error prejudicial to the defendant in the record. The case appears to have been fairly and impartially tried. The judgment of the district court is affirmed.

AFFIRMED.