No. 22,863.

THE STATE OF KANSAS, *Appellee,* V. GEORGE TOLIVER, *Appellant.*

SYLLABUS BY THE COURT.

1. BURGLARY—*Information—Distinction between Grounds of Motion to Quash.* A motion to quash an information for burglary, on the ground the facts stated do not constitute a public offense, raises the question whether all ingredients of the crime are present, but does not raise the question whether details, not of the substance of the offense, but which good pleading requires should be stated, are present.

2. SAME—*Name of Owner of Building Omitted.* An information for burglary may be sufficient as against a motion to quash on the ground no offense is stated, although the name of the known owner of the building be not disclosed.

3. SAME—*Breaking and Entering Store—Ownership of Store—Properly Laid in Occupant of the Store.* Under the statute of this state, making it burglary to break and enter, in the nighttime, with felonious intent, a store in which goods are kept, the essence of the crime is violation of the security of the occupancy. The person injured is the one who occupies the store by keeping goods there, and ownership of the store is properly laid in such occupant.

4. SAME—*Information—Ownership of Store Alleged to be in a "Company."* In an information for burglary of a store and for larceny committed in connection with the burglary, ownership of the store and goods was alleged to be in "The Durnil Dry Goods Company." *Held,* it was not necessary further to identify the owner by stating whether the company were a corporation or a partnership.

5. SAME—*Instruction to Jury—Individual Responsibility of Jurors.* Under the facts stated in the opinion, it was not prejudicial error to omit to give, upon request, a monitory instruction concerning the individual responsibility of each juror in determining what the verdict should be.

6. SAME—*Fact Established Beyond Dispute.* The proceedings considered, and *held,* the court did not err in instructing the jury that the crime of burglary had been established beyond dispute, and that the only issue for their consideration was whether or not the defendant participated in the burglary as a principal.

7. SAME—*No Substantial Merit in Assignments of Error.* Various assignments of error considered, and held to be without substantial merit.

Appeal from Wilson district court; SHELBY C. BROWN, judge. Opinion filed November 12, 1921. Affirmed.

*F. B. Hanlon,* of Coffeyville, *E. D. Mikesell,* of Fredonia, and *F. S. Jackson,* of Topeka, for the appellant.

*Richard J. Hopkins,* attorney-general, and *B. M. Dunham,* county attorney, for the appellee; *W. H. Edmundson,* of Fredonia, of counsel.

The opinion of the court was delivered by

BURCH, J.: The defendant was convicted of burglary and larceny, and appeals.

The charging parts of the information read as follows: .

". . . did then and there unlawfully, wrongfully, willfully, feloniously and burglariously break and enter in the nighttime a store building in the city of Neodesha, Wilson county, Kansas, occupied and used by The Durnil Dry Goods Company as a retail store, where were kept and offered for sale goods, wares and merchandise, with intent to take, steal and carry away therefrom goods, wares and merchandise belonging to the said The Durnil Dry Goods Company, . . .

". . . did then and there unlawfully, wrongfully and feloniously take, steal and carry away from a store building situated in the city of Neodesha, Wilson county, Kansas, and occupied by The Durnil Dry Goods Company as a retail store, goods, wares and merchandise . . .

". . . all being of the goods, wares, merchandise and chattels of the said The Durnil Dry Goods Company . . ."

A motion to quash the information, on the sole ground it did not state facts sufficient to constitute a public offense, was made and overruled. It is contended the court erred in overruling the motion, because ownership of the building burglarized was not stated, and because the nature of the organization or association called The Durnil Dry Goods Company was not stated.

The statutes defining the crimes charged read as follows:

"Every person who shall be convicted of breaking and entering in the nighttime . . . any . . . store, . . . in which there shall be at the time some human being, or any goods, wares, or merchandise, or other valuable thing kept or deposited; . . . . with the intent to steal or commit any felony therein, shall on conviction be adjudged guilty of burglary in the second degree.

"If any person in committing burglary shall also commit a larceny, he may be prosecuted for both offenses in the same count, or in separate counts of the same indictment; and on conviction of such burglary and larceny, shall be punished by confinement and hard labor, in addition to the punishment hereinbefore prescribed for the burglary, not exceeding five years." (Gen. Stat. 1915, §§ 3436, 3440.)

An information may be defective because some element of the crime attempted to be charged is omitted. Pleading to such an information and going to trial upon it waive nothing. Should a verdict of guilty be returned, judgment may be arrested on motion of the defendant, or on the court's own motion, because the information did not state facts sufficient to constitute a public offense. An information may be defective for lack of details which are not of the substance of the offense, but which good pleading requires should be stated. Such defects may be waived, and they are waived, unless the information be challenged in due time by a motion to quash which points out the particular insufficiencies. In this instance, every element of the crimes defined by the statutes appears in the information, and the motion to quash, which specified no defect except failure to state a public offense, was properly overruled.

The defendant very earnestly insists that, under the authorities, including decisions of this court, the information was fatally defective because ownership of the store was not stated. In the case of *The State v. Fockler*, 22 Kan. 542, the store burglarized was described in the information as follows:

"A certain store situated on the north end of lot number five, in block number seventeen (17), in Witherell's addition to the town (now the city) of Osage City, in the county and state aforesaid." (p. 542.)

In the opinion it was said:

"We think the name of the owner of the 'store' should have been stated in the information. We think the authorities are uniform in holding that in burglary the name of the owner of the building must be given in the charge, if known, and if not known, then that fact must be set out." (p. 543.)

In framing the syllabus, however, the court was much more reserved. The syllabus reads:

"A criminal information which charges the commission of burglary by the breaking and entering into a certain store building in the night-time with intent to steal, but which does not state or show who the owner of the building was, or whether it was owned or possessed by any person or not, is not sufficient."

An examination of the decided cases will disclose that the word "owner" does not of necessity mean owner at all. Generally the term refers to occupancy or possession at the time of the burglary, and it may apply to one who has wrongful pos-

session as against the owner. If ownership be unknown, it need not be stated; if it be in several, it is enough to name one (Gen. Stat. 1915, § 8020) ; and so far as legal title is concerned, a man may be guilty of burglarizing his own house. What, then, is the basis of the requirement, said to be imperative in a multitude of decisions, that ownership of the building burglarized must be stated in the indictment or information?

A full account of the law of burglary has not yet been written. Pollock and Maitland were unable to trace its genesis (2 Hist. Eng. Law, 493), and Holdsworth leaves the course of its development incompletely sketched (3 Hist. Eng. Law, 292). When Britton wrote, burglary was beginning to be something different from the ancient hamsoken, or housebreaking:

"Let inquiry also be made of burglars. Such we hold to be all those who feloniously in time of peace break churches, or the houses of others, or the walls or gates of our cities or boroughs. Infants under age, and poor people, who through hunger enter the house for victuals under the value of twelve pence, are excepted; as are also idiots and madmen, and others, who are incapable of felony; and, those, who enter into any tenement of seisin in respect of some right which they think they have, are not held to be burglars. The punishment of such felons is death." (Book 1, ch. 11, Nichols' Translation, p. 36.)

When Coke wrote, common-law burglary was practically limited to nighttime depredations on mansion houses:

"A burglar (or the person that committeth burglary), is by the common law a felon, that in the night breaketh and entreth into a mansion-house of another, of intent to kill some reasonable creature, or to commit some other felony within the same, whether his felonious intent be executed or not.

. . . . . . . . . . . .

"The word in the indictment or appeal, is *noctanter*,

. . . . . . . . . . . .

"The indictment saith, *Domus mansionalis*, a mansion or dwelling-house." (3 Inst. 63, 64.)

The approximate time when the word "noctanter" became indispensable to an indictment for burglary has not been ascertained. The disposition to restrict burglary to mansion houses led Coke to explain burglary of a church by saying a church is the mansion house of Almighty God.

Hale quotes Spelman's definition of burglary, which recognized breaking of churches and gates and walls of towns, and quotes Coke's definition, but confines his text to what may be regarded as a mansion house (1 Hist. P. C., 549, 556). This phase of the development of the law of burglary is described by Hawkins as follows:

"It seems to be the current opinion at this day, that it can be committed only in a *dwelling-house;* and that the indictment for it must necessarily allege the fact *in domo mansionali.*"

"And *Sir Edward Coke* seems to say, that the breaking *a church,* &c., is therefore burglary, because the church is the mansion house of God. But I can find nothing in the more ancient authors to countenance this nicety; for the general tenor of the old books seems to be, that burglary may be committed in breaking houses, or churches, or the walls or gates of a town.—And *Staundforde* and *Anderson* mention precedents of indictments of burglary *in domo* without adding *mansionali.* However, the constant course of late precedents and opinions makes it certainly very dangerous, if not an incurable fault, to omit the word *mansionalis* in an indictment of burglary in a house; and therefore without question, it ought always to be inserted where the truth of the case will bear it. But surely it cannot be necessary or proper to have any such word in an indictment of burglary in a church, which, by all the books above cited, seems to be taken as a distinct burglary from that in a house." (Hawkins' P. C., book 1, ch. 17, §§ 16, 17.)

As Coke indicated, it was not necessary that the felonious intent accompanying breaking and entering be accomplished, and the essence of the crime consisted in violating the security of the habitation. When statutes made invasion of places other than dwelling houses, burglary, the essence of the crime consisted in violating the security of the occupancy or possession.

Side by side with the substantive law of burglary, and perhaps to an extent dominating it, grew the system of pleading. In this field the legal mind refined with luxuriant subtlety, and some doctrines, including that of certainty, assumed such extravagant importance that they are astonishing to the practical intelligence of to-day. Expansion of the notion of certainty in criminal pleading is apparent in the following quotation from Hawkins:

"It seems to be taken as a ground in many books, that regularly the persons offended, as well as the defendant, ought to be certainly described in every indictment." (P. C., book 2, ch. 25, § 71.)

The State v. Toliver.

Hawkins' authorities, except the case from Croke, are not immediately available. Crystallization of rule is indicated by the decision in that case:

"A THIRD EXCEPTION. Because the indictment is, '*quòd felonicè furatus fuit quandam peciam panni linei cujusdam Antho. Nixon praed' draper, ad valentiam,*' &c., and doth not say, *de bonis & catallis cujusdam Anthonii Nixon,* as the common form of the precedents are; and therefore ill; for an indictment ought to be certain to every intent, without any intendment to the contrary; and here it may be that this piece of linen was not the goods and chattels of *Anthony Nixon,* at the time of his taking of them, but by him let out, or delivered, or pledged to another: and it ought to have been shown whose *bona & chatalla* they were; and it ought not to vary from all other precedents.—And the COURT held it to be a material exception, for the reasons aforesaid: and for that cause the indictment was discharged by the whole Court." (Long's Case, 1 Croke, 489, 490.)

Chitty cites many authorities in support of the rule that, when the name of the person injured is known, it is fatal to omit the name from the indictment (1 Cr. Law, 213), and the rule extended to indictments for burglary. Thus East says:

"It is necessary to ascertain to whom the mansion belongs, and to state that with accuracy in the indictment. And here it is to be lamented that the same rule does not prevail in this case as in arson, which is considered as an offense against the actual possessor by whatever title he may hold the possession. But in burglary the rule is much more complex; the ownership being neither referable altogether to the legal title, nor to the possession, but partaking sometimes of one sometimes of the other, as well as of both." (2 Cr. Law, 499.)

Now in order that a mansion house should be such, it was essential that somebody should bear to it the relation indicated by the flexible term "owner," and it was essential to burglary that such owner be some one other than the person making the hostile incursion. Definition of the crime, however, stopped with saying the dwelling house "of another." While ownership was in a sense an ingredient of the offense, it was always sufficient that it be vested in any one except the intruder. It was never material that the owner be any particular person or have any specific name or addition. Except for the tyranny of the rule of pleading, burglary under the statute of this state would be made out in an information in the terms of the information in the Fockler case (*The State v. Fockler,* 22 Kan. 542), or in an information which merely charged that the *locus in quo* was owned by a person other

than the defendant. The purpose of the rule of pleading requiring the name of the person offended to be stated, was merely identification, albeit identification "certain to every intent." The result is, the requirement that the name of the person injured by burglary be stated, in order fully to apprise the defendant of the accusation against him, is one thing, while the requirement that the name of the person injured be stated, not as a descriptive circumstance, but as a substantive part of the offense itself, is quite another thing; and the court holds an information for burglary may be sufficient as against a motion to quash on the ground no offense is stated, although the name of the known owner of the building burglarized be not disclosed.

The statute makes it burglary to break and enter a store in which goods are kept. In the present case it was alleged the breaking and entering were done unlawfully, wrongfully, feloniously and burglariously. That was sufficient to apprise the defendant the store did not belong to him. It was alleged the building was occupied and used by The Durnil Dry Goods Company, as a retail store, where goods, wares and merchandise were kept for sale. The crime being one against security of possession, the criterion of ownership for the purpose of pleading burglary is not legal title, but occupancy or possession. (9 C. J. 1044.) The person injured is the one who occupies the store by keeping goods there. The code of criminal procedure requires that an information state the facts in plain and concise language (Gen. Stat. 1915, § 8017), and the plain statement of the facts in the information under consideration fully identified the "owner" of the store.

It is said the description of the owner of the store and goods was bad, because the word "company" was used without designating its character. In the case of *The State v. Suppe*, 60 Kan. 566, 57 Pac. 106, the syllabus reads as follows:

"An information alleged that the defendant knowingly and feloniously received into his possession personal property which had been stolen from the Carterville Mercantile Company, without averring whether said company was a corporation, joint-stock company, or partnership. *Held,* that the court erred in overruling a motion to quash the information."

The opinion expounded the doctrine that a defendant should be apprised of the exact charge against him, to enable him to prepare his defense, and to protect him from further prose-

The State v. Toliver.

cution. It was said a statement of the ownership of property is essential to such exactness, and because the Carterville Mercantile Company, although bearing a name appropriate to corporate existence, might be a partnership, and title might be in the individual partners, the information did not state a public offense. The conclusion that the information did not state a public offense at all, was unsound, for reasons which have been indicated. A conclusion that the information was defective for want of certainty in describing the owner, would be justified by all the authorities which have perpetuated the medievalism of the common-law system of criminal jurisprudence. The writer does not join in recognition of the supremacy of those authorities, and the court declines to extend their reasoning to burglary and to larceny committed in connection with burglary.

The Suppe case was decided in 1899. In the year 1900, in a case involving a bond given by "The Boyden Abstract Company," the court delivered itself as follows: .

"It purports upon its face to be the bond of a corporation. The decisions are uniformly to the effect that institutions with names of a character like unto that of the concern in question will be understood to be corporations, in the absence of contrary knowledge. The name, 'The Thomas Harrow Company,' fairly imports a corporation. (*Seymour & Son v. The Thomas Harrow Co.*, 81 Ala. 250, 1 South. 45.) The name, 'The Muskingum Manufacturing Company,' implies a corporation. (*Harris v. The Muskingum Manufacturing Company*, 4 Blackf. [Ind.] 267.) The name, 'The Cicero Hygiene Draining Company,' denotes a corporation. (*Cicero Hygiene Draining Company v. Craighead*, 28 Ind. 274.) So, also, does the name, 'The Indianapolis Sun Company.' (*The Indianapolis Sun Co. v. Horrell*, 53 Ind. 527.)" (*Allen v. Hopkins*, 62 Kan. 175, 187, 61 Pac. 750.)

Therefore the name, "The Durnil Dry Goods Company," imported an incorporated body. The defendant was authorized to frame his defense accordingly, and the record would have protected him from subsequent prosecution accordingly. The weight of authority is that, in charging burglary of corporate property, it is not necessary to alleged incorporation (Note; 12 Ann. Cas. 683); and the same rule should apply to larceny committed in connection with burglary.

There is another view. One of the most common applications of the word "company" is to an association of persons for business purposes. Usually companies are either corporations or partnerships. If the association be incorporated,

the corporate entity will hold title to its property. If the association be a partnership, the partners will hold title. The partners will necessarily be those and only those who compose the named company, and their individual names are in fact of no more practical consequence to a defendant charged with burglary than the names of incorporators would be. The precise state of the legal title to the property is not a matter of concern to him. Naming the owner in the information serves no purpose except to identify the property, and whatever the composition of The Durnil Dry Goods Company, that purpose was sufficiently accomplished, under any rational conception of the administration of justice, by naming it as owner.

The Durnil Dry Goods Company was a corporation. Evidence of the fact was not disputed, and ownership of the store and goods was not disputed. The proceedings at the trial disclosed that the asserted imperfection in the information did not embarrass the defendant with respect to the merits of the case, and no substantial right of the defendant was in fact prejudiced. Therefore, the judgment may not be reversed because the information was not quashed. (Gen. Stat. 1915, §§ 8024, 8215.)

The defendant requested an instruction concerning the individual responsibility of each juror in determining what the verdict should be, and none was given. The cause of *The State v. Witt*, 34 Kan. 488, 8 Pac. 769, is relied on as establishing the principle that such an instruction must be given in a criminal case if requested. The offense charged in the Witt case was capital, the proof was wholly circumstantial, and the decision was predicated on those facts. In this instance, burglary and larceny were proved beyond controversy. The defendant's connection with the crimes was proved directly by the testimony of his confederates, who were abundantly corroborated, and by proof of incriminating statements and conduct of the defendant himself. Therefore, need for the monitory instruction is not apparent. The defendant polled the jury, after the verdict was returned, and each juror signified that the verdict was his verdict and that he was satisfied with it. Polling the jury served no purpose except to test the genuineness of each juror's concurrence in the verdict. Under these circumstances, failure to give the instruction did not constitute prejudicial error.

The court gave the following instruction:

"That there was a burglary committed in violation of the statute above quoted on the night of the 25th of September, 1919, at the store of The Durnil Dry Goods Company at Neodesha, Wilson county, Kansas, has been established by the evidence in this cause beyond dispute. So that the only issue for your consideration is whether or not the defendant, George Toliver, participated in said burglary in such manner as to be guilty as a principal in said burglary."

The defendant argues that he placed the commission of burglary in issue by his plea of not guilty, and the issue of fact thus raised could not be taken from the jury and determined by the court. The case of *The State v. Jackson,* 42 Kan. 384, 22 Pac. 427, is cited in support of the argument. The syllabus reads as follows:

"In a criminal prosecution, where it is necessary for the maintenance of the action that a certain fact should be shown, and such fact is disputed by the defendant, both by his plea of not guilty and during the trial by his evidence, and evidence is introduced with reference to such fact, but the evidence introduced does not clearly, unquestionably, directly and conclusively prove the fact, it is error for the trial court to take the question with reference to such fact away from the jury and to decide it itself."

In this instance the defendant did not dispute burglary, except by his plea, and the evidence introduced directly and conclusively proved the crime. It was proved directly by the burglars themselves, and their testimony was corroborated, not merely by circumstances, but by other convincing evidence. The sole fact controverted at the trial was whether or not the defendant had guilty connection with the active participants, and the instruction given was doubtless prompted by the following language, found in the opinion in the cited case:

"In criminal cases it is never competent for the court to take a *question* of fact away from the jury and to decide it itself. Of course a necessary fact may in some cases not be a *question* of fact, for the fact itself might be admitted by the parties, or it might not be disputed, and the entire and uncontradicted evidence in the case might clearly, unquestionably, conclusively and directly prove the same. In such a case there might not be any *question* of fact to be decided . . ." (p. 386.)

Since no ingenuity, or even perversity of mind, could find a basis for disputing burglary, it was not error to give the instruction.

There is nothing else of importance in the case. A captured telegram to the defendant from one of his confederates, and testimony relating to it, were properly received in evidence. The corporate character of the dry goods company was properly proved. Ownership of the building and goods, and the value of the goods, were sufficiently established. The testimony of the defendant's accomplices relating to his participation in the burglary and larceny was well corroborated. A requested instruction appropriate to a case depending on circumstantial evidence was inapt. Objections to various instructions given are without substantial merit. The verdict was sustained by the evidence, and the judgment of the district court is affirmed.