(No. 36498.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SHERMAN EDWARD STEWART, Plaintiff in Error.

*Opinion filed September 22, 1961.*

John R. Snively, of Rockford, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Donald C. Woolsey, State's Attorney, of Galesburg, (Fred G. Leach, Assistant Attorney General, of counsel,) for the People.

Mr. Justice Schaefer delivered the opinion of the court:

In November of 1955, a jury in the circuit court of Knox County found Sherman Edward Stewart and Eugene Bair guilty of burglary and larceny, and found also that Stewart had formerly been convicted of burglary. Stewart was sentenced to the penitentiary for life as an habitual criminal, (Ill. Rev. Stat. 1955, chap. 38, par. 602,) and he brings this writ of error to review his conviction. Bair's case is not before us.

Stewart attacks his conviction on numerous grounds. One of them is well taken, and requires that the judgment be reversed and the cause remanded for a new trial. We shall discuss only that one, and such of the others as are likely to recur upon another trial.

To prove that Stewart was an habitual criminal, the People offered in evidence a certified copy of a judgment of the circuit court of Rock Island County, entered on January 25, 1945, convicting one "Sherman Edward Stewart, alias Sherman Stewart," of burglary, and sentencing him to the penitentiary for a term of not less than three nor more than ten years. No evidence at all was offered, however, to identify the defendant as the person who was so convicted. The People concede that the decision of this court in *People* v. *Casey,* 399 Ill. 374, "stands for the proposition that there must be proof of identity of the person charged as an habitual criminal in addition to the identity of names appearing from a previous conviction or convictions." They urge us, however, to reconsider that decision.

When this court was confronted with this issue in the *Casey case,* in 1948, it had already been before many of the courts of the country, with conflicting results. (36 Ill. Bar. J. 555; 26 Chicago-Kent L. R. 340; see cases collected, 11 A.L.R. 2d 870.) In a unanimous opinion, the court chose what it considered the sounder view. It said, "We can perceive of no reason why the crucial fact of establishing the identity of the defendant with the former convictions should not be proved with the same certainty which the law requires as to the substantive offense. We are dealing with the degree of proof required to establish a fact which, if proved, inflicts a penalty of additional years upon a defendant. It would be contrary to the law of what is right and just in a criminal action to hold that the enhanced penalty could be inflicted in the face of an uncertainty as to whether defendant was the same person as the one described in the records offered to prove the former conviction. * * * It will be observed that the statute gives the authenticated copy of the record of conviction *prima facie* effect as evidence, but there is the further question as to the defendant being identified as the person previously convicted. Undoubtedly in civil cases the rule is that identity of names

raises a presumption that the person named and the one referred to in the previous record is one and the same person. (*Clifford* v. *Pioneer Fire-Proofing Co.* 232 Ill. 150; *Filkins* v. *O'Sullivan,* 79 Ill. 524.) In the trial of a criminal case, the record of a prior conviction of an infamous crime may be introduced for impeachment purposes. In such case proof of such conviction need not be made beyond a reasonable doubt and the presumption arising from the identity of names will be sufficient. (*People* v. *Buford,* 396 Ill. 158; *People* v. *Lawson,* 331 Ill. 380.) In a prosecution under the Habitual Criminal Act, the defendant is clothed with the presumption of innocence and, as has been pointed out, this applies to the fact of his former conviction which, if proved, enhances the penalty. The mere proof of a record containing identity of name with that of the defendant on trial is not sufficient to overcome the presumption of innocence where the enhancement of the penalty depends upon the proof of such fact." 399 Ill. at 378-380.

In 1957 the General Assembly enacted a comprehensive revision of the Habitual Criminal Act, but it made no attempt to alter the rule adopted in the *Casey case,* (see Ill. Rev. Stat. 1959, chap. 38, par. 603.3; Univ. of Chicago Law School, Law Revision Studies, No. 1, p. 20;) and we see no reason to depart from the views there expressed.

The People suggest that if we adhere to our decision in the *Casey case,* the cause "should be reversed and remanded for the imposition of a proper sentence without regard to the finding that the defendant was an habitual criminal." That finding, they say, should be regarded as surplusage, because the defendant had "a full and fair trial," and it is therefore necessary only to remand the case for the imposition of sentence on the jury's finding that the defendant was guilty of burglary and larceny.

In support of this suggestion they cite *People* v. *Berger,* 396 Ill. 97. There the defendant had been sentenced as an habitual criminal upon a jury verdict that found him guilty

of robbery but did not explicitly find that he had previously been convicted of a felony. The court reversed the judgment, and disposed of the case in these terms, p. 101: "The judgment of the criminal court is reversed and the cause remanded, with directions to enter a judgment committing the plaintiff in error to the Illinois State Penitentiary in accordance with the penalty fixed by statute for robbery." The same course was followed in *People* v. *Atkinson,* 376 Ill. 623, *People* v. *Sarosiek,* 375 Ill. 631, and *People* v. *Crane,* 356 Ill. 276.

Each of these cases in which the court reversed for a proper sentence, however, was before the court upon a common-law record only, and what the court was holding was that the defendant's claim that he was prejudiced by putting the former conviction before the judge or jury could not be reached upon such a record. On the other hand, in *People* v. *Parker,* 356 Ill. 301, *People* v. *Smithka,* 356 Ill. 624, and *People* v. *Lund,* 382 Ill. 213, where the court had before it bills of exceptions showing the proceedings at the trials, the judgments were reversed and the causes remanded for new trials. The point of distinction between the two lines of cases was clearly drawn in *People* v. *Atkinson,* 376 Ill. 623, at 626-7. It was that the contention that evidence of a former conviction was not competent or material, and that it prejudiced the defendant, would not be entertained in the absence of a bill of exceptions. "An alleged prejudicial error claimed to have arisen by the admission of incompetent and immaterial evidence must be preserved and made a part of the record by a bill of exceptions." 376 Ill. at 626, 627.

On the other hand, the underlying assumption that the defendant had had "a full and fair trial" could not be accepted when the record before the court showed that the earlier conviction had been put before the trier of the fact. So in *People* v. *Parker,* 356 Ill. 301, 303, where the habitual count was quashed in this court, the court said: "It is

argued by the People that if the judgment must be reversed it should be only for the purpose of imposing a proper sentence, the guilt of the defendant being proved. This suggestion cannot be followed. Under a proper indictment, limited as herein indicated, this evidence, which would be prejudicial to the rights of the defendant, would not, except for the purpose of impeachment, be either competent or material. It is necessary that the judgment be reversed and the cause remanded to the criminal court of Cook county, with directions to quash that portion of the indictment referring to the previous offense, to require a plea to the indictment as partially quashed, and for a new trial." (See also, *People* v. *Lund,* 382 Ill. 213, 217-8; *People* v. *Perkins,* 395 Ill. 553, 559.) In the present case, the jury that found the defendant guilty of burglary and larceny also had before it what purported to be his record of a prior conviction of burglary. In the absence of the habitual criminal charge, the record of the prior conviction would not have been admissible. Upon the authority of the cases cited, we conclude that there must be a new trial.

The defendant has attacked the sufficiency of the indictment upon several grounds, all but one of which are too frivolous to require discussion. The indictment charged that the defendant "did then and there unlawfully, feloniously, burglariously, wilfully, maliciously and forcibly break and enter a certain building then and there occupied and in the possession of Golden Cream Dairy Inc., a Corporation, * * *." The defendant contends that it is fatally defective because it did not allege the ownership of the building. It is true that many decisions of this court have asserted, in unequivocal terms, the proposition for which the defendant contends. "Except in so far as the rule may be changed by statute, an indictment for burglary, whether it comes under the common law or under a statute, must alleged the ownership of the building broken or entered, if it is known, or it will be fatally defective." (*People*

v. *Picard,* 284 Ill. 588, 590.) "The ownership of the building entered is an essential allegation in charging the offense of burglary." (*People* v. *Pernalsky,* 334 Ill. 38, 39.) Many other jurisdictions so hold. See cases collected, 20 A.L.R. 510, 169 A.L.R. 887.

On the other hand, it has long been held by this court that "In burglary, the ownership may be laid in the occupant whose possession is rightful as against the burglar." (*Smith* v. *People,* 115 Ill. 17, 20; *People* v. *Kreisler,* 381 Ill. 453, 457.) In the *Smith case,* the indictment charged that the defendant broke and entered the dwelling of Francis Demling, while the proof showed that Demling did not own the building but rented the apartment in which he lived from one Groosheimer, the owner, who lived in another apartment in the building. It was held that there was not a fatal variance. And in the *Kreisler case* the indictment charged the defendant with breaking and entering a store building of Leman Philbrook and Julius Voelker, partners, doing business as Philbrook and Voelker. Although the proof showed that the building was owned by Philbrook and not by the partnership, the court held that there was not a fatal variance between the indictment and the proof.

Our opinions have emphasized that the purpose of the requirement that the ownership of the building be stated is to enable the accused to prepare for trial, and to plead former acquittal or conviction under the indictment in bar of another prosecution for the same offense. (*People* v. *Johnson,* 20 Ill.2d 336, 338.) It has also sometimes been said that such an allegation is required in order to show that the building was not the property of the accused and to negative his right to enter it. (See 169 A.L.R. at 888.) In a scholarly and sensible opinion, Mr. Justice Burch of the Supreme Court of Kansas pointed out that both purposes were served by an indictment that alleged occupation and use of the building rather than its ownership. He pointed

out that the precise state of the legal title to the property is not a matter of concern to the defendant, and that naming the owner served only to identify the property. He said: "In the present case it was alleged the breaking and entering were done unlawfully, wrongfully, feloniously, and burglariously. That was sufficient to apprise the defendant the store did not belong to him. It was alleged the building was occupied and used by the Durnil Dry Goods Company as a retail store where goods, wares, and merchandise were kept for sale. The crime being one against security of possession, the criterion of ownership for the purpose of pleading burglary is not legal title, but occupancy or possession. 9 C.J. 1044. The person injured is the one who occupies the store by keeping goods there." *State* v. *Toliver,* 109 Kan. 660, 202 Pac. 99; 20 A.L.R. 502, 507.

We believe that this is the correct view. Although it was not expressly articulated, it is the view that underlies the decisions of this court in *Smith* v. *People,* 115 Ill. 17, *People* v. *Kreisler,* 381 Ill. 453, and many other cases. When an allegation of ownership may be established, not by proof of ownership but by proof of occupancy and possession, a requirement that ownership must be alleged has become an empty formality. The premises involved are effectively identified, and the rights of the accused are fully protected by an indictment that charges the unlawful entry of a building in the possession of another. We hold, therefore, that the indictment in this case is sufficient.

The defendant also asserts that certain exhibits which were admitted in evidence against him were the products of an illegal search and seizure, and that his motion to suppress them should have been granted. An appraisal of this contention requires an examination of the circumstances under which the articles in question came into the possession of the police. About midnight on July 3, 1955, a Mrs. Price, who lived alone in a sparsely built up part of Galesburg, returned to her home and found a strange car parked in front

of it. A friend drove her to police officers whom she asked to investigate. The officers, Paul Davis and Robert Higgins, looked into the car, which had Illinois license plates and a Davenport, Iowa, vehicle sticker. The ignition key was in the car and in the back there was clothing, a keyhole saw, a pair of tin snips, a chisel and sledge hammer and a piece of rope.

The officers searched the immediate neighborhood, but found no one. Davis then removed the key from the car and went into Mrs. Price's house. He sat where he could watch the car, while Higgins sat in the squad car a block away with the lights out. After an hour or so, Stewart and Bair came hurrying down the street carrying some objects, and got in the car. The officers converged on them. Davis flashed his light inside the car and saw crowbars, screwdrivers and a revolver on the front seat. He ordered the men out. Both officers testified that Bair asked, "How about a deal?", and that Davis answered, "No deal." Bair was wearing gloves. Other officers were called and one of them, officer John Watkins, drove the car to the station. He testified that he found a paper sack on the floor of the car, which contained currency, sales slips, money bags and checks, which he took into the station. Some time later he brought into the station the crowbars and other tools that were in the car. The contents of the paper sack indicated that it was the property of the Golden Cream Dairy, located about two blocks from Mrs. Price's home. An examination showed that a window of the dairy building had been pried open and the safe had been broken into.

A wristwatch and a box of cartridges were admitted in evidence but they were found by the officers in the road where the defendant's car was parked and were not taken from the defendants. The clothing that the two men wore was also introduced in evidence, together with certain materials scraped from that clothing, but their clothing was not removed until after they had been charged with the

crime and no unlawful search was involved. The revolver, the crowbars, a large screwdriver, the sledge hammer and the paper sack and its contents were also admitted in evidence and we assume that these are the items to which the defendant's contention relates.

With the exception of the paper sack and its contents, all of these items were visible to the officers upon looking into the defendant's car, without any search whatsoever. They were burglar's tools, within the meaning of the statute which provides that "Whoever is found having any picklock, crow, key, bit or other instrument or tool, with intent to break and enter any building, * * * with intent to commit * * * larceny, or other felony, shall be imprisoned in the penitentiary not less than one nor more than two years." (Ill. Rev. Stat. 1959, chap. 38, par. 87.) This statute was violated in the presence of the officers. They saw the tools, and the intent was inferable from the circumstances. The arrest of the defendants was authorized, and the search of their car, which revealed the paper sack, was not unreasonable.

The judgment of the circuit court of Knox County is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*