271 A.2d 310.

## STATE *vs.* GEORGE MURPHY.

### DECEMBER 4, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher.

738

PAOLINO, J. The indictment in this case alleges that the defendant "* * * did break and enter in the nighttime a certain building, to wit, the building of Avery & Adams Inc., a corporation, with intent to commit larceny." The case was tried before a justice of the Superior Court and a jury. At the close of the state's case, the trial justice denied a motion by the defendant for a directed verdict, and the defendant then proceeded with his defense. The jury subsequently found him guilty as charged. The case is before us on the defendant's bill of exceptions, consisting of two exceptions. One is to the denial of the defendant's motion for a directed verdict and the second is to the denial of his motion for a new trial.

The facts pertinent to the issues raised by these exceptions follow. On Sunday, November 5, 1967, at approximately 7:23 p.m., an alarm sounded at the police station in Westerly. The alarm was triggered by a burglar alarm system installed in the building occupied by Avery Adams, Inc., on Industrial Drive in Westerly, where it

carried on a television, radio, and appliance sales and service business. The burglar alarm system at the police station rings if there is a break in the alarm system during nonbusiness hours; no alarm sounds on the premises. Sergeant Joseph G. DeFanti was on duty at the station. When he heard the alarm and ascertained the location, he dispatched by radio officers Robert Chiaradio and Joseph C. Manfredi, who were cruising in the general area.

Upon their arrival at the building at about 7:25 p.m., the officers noticed that a side window of the building was broken and that a door nearby was slightly opened. After radioing the station for additional help, the officers went into the building and heard the shuffling of feet on the floor and an object falling or being dropped to the floor. There were no lights on in the building. It was dark inside the building as well as outside. One of the officers turned on his flashlight and saw a man inside the building, who was later found to be defendant. The officer told defendant to "hold it," but defendant started to move toward the rear of the store. The officers followed him and reached him in the boiler room where he was in a crouched position. On the floor near defendant there was a white radio, the front part of which was facing the ceiling. When the officers reached him, defendant said: "You got me. I don't know what I'm doing. I'm drunk." After a slight resistance by defendant, the officers put handcuffs on him and brought him to the station in the police cruiser.

The officers testified that they found, parked outside the building, several feet from the door, and on the driveway adjoining the building, a car owned by defendant. The rear seat of the automobile had been removed.

Charles H. Hoelck, the owner of the building and president of Avery & Adams, Inc., sole occupant of the premises, testified that the store was not open for business on Sunday, November 5, 1967; that he had locked the building

securely on the day before, Saturday, November 4, 1967, at about 5 p.m.; that no doors were ajar nor were any windows broken at that time; that neither he nor anyone else had with authorization entered the building from the time he closed it until the time of the incident involved here; that the radio found in the boiler room was in its place in the front of the store when he secured the building on the Saturday prior to entry; and that it was a new radio and belonged to his company. He also testified that he was the last person to leave the premises on Saturday, November 4, 1967; that before leaving he set the alarm; and that each door in the building was connected with the alarm system. The record also shows that defendant was neither an employee of the company, nor did he have permission to go into the building after business hours.

The defendant took the stand in his own defense. He admitted that the police found him on the premises, but said that he was drunk and did not know what he was doing. He testified that he was under psychiatric care and that his drinking was "voluntary." He testified that on the day of the alleged offense he started to drink heavily at home around noontime; that he then went to two cafes near the building broken into, where he drank beer and whiskey between 12:30 and 1 p.m. and 3:30 and 4 p.m.; and that in addition to drinking alcoholic beverages, he had taken six to ten pills. He further testified that when he entered the premises in question he thought he was going into one of the two liquor establishments; that he was looking for a bathroom; that the door he entered was open; that he did not remember anything after his entry; and that he did not remember taking a radio.

# I

## Defendant's Motion for a Directed Verdict

The defendant's first exception is to the denial of his motion for a directed verdict at the close of the state's case. There is no dispute about the applicable rule governing the duty of the trial justice in passing on a motion for a directed verdict. The defendant concedes that in passing on such a motion in a criminal case, neither the credibility of the witnesses nor the weight of the testimony is before the court, but that the trial justice must give full credibility to the state's evidence, view it in the light most favorable to the state and draw therefrom every reasonable inference consistent with guilt. *State* v. *Lisi,* 105 R. I. 516, 253 A.2d 239; *State* v. *Contreras,* 105 R. I. 523, 253 A.2d 612.

The defendant bases the instant exception on his claim that there is a material variance between the allegations of the indictment as to the ownership of the building broken into and the proof submitted thereof. He argues in substance that the indictment alleges ownership in Avery & Adams, Inc., that such allegation of ownership is an essential allegation of the indictment and the proof must conform thereto; and that the uncontroverted evidence is that the premises were owned not by the corporation, but by Charles H. Hoelck, its president and sole stockholder. He concludes that this variance was material and therefore fatal.

We do not agree with defendant's claim that the indictment alleges ownership in Avery & Adams, Inc., and, consequently, cannot agree with his conclusion that there is a variance between the allegation in the indictment referring to the building as "the building of Avery & Adams Inc., a corporation" and the proof that the building was owned by Charles H. Hoelck, and occupied by Avery & Adams, Inc.

We interpret the allegation, in question as referring to occupancy, rather than to ownership. In other words, in describing the building broken into, the grand jury chose to refer to the occupants of the building, rather than to the owner or owners thereof, for purposes of identification. This interpretation finds support in the record which indicates that the state knew who owned the building and who occupied it. The complaint and warrant, which was issued by the District Court of the Third Judicial District (presently known as the Fourth division) upon the complaint of a captain of the Westerly Police Department, refers to the premises in question as "* * * the business place of Avery and Adams Inc. Charles Hoelck, President, located in a building owned by Charles Hoelck * * *." So viewed, there is no variance between the allegation in the indictment and the proof.

However, this raises the question whether the ownership of the building broken into is a material element of the offense for which defendant was indicted. If it is, then the state's failure to prove this element may entitle defendant to a directed verdict. We note at the outset that defendant is not charged with burglary, which is defined at common law as "* * * the breaking and entering the dwelling-house of another in the night time with the intent to commit a felony therein, whether the felony be actually committed or not." *State* v. *Hudson*, 53 R. I. 229, 230, 165 A. 649, 650. The penalties for common-law burglary have been codified in Rhode Island under G. L. 1956 (1969 Reenactment) §11-8-1: "Every person who shall commit burglary shall be imprisoned for life or for any term not less than five (5) years." The indictment in the case at bar charges defendant with the commission of an offense in violation of §11-8-4 (1969 Reenactment), which, in pertinent part, reads as follows:

"Every person who shall break and enter any bank, shop, office or warehouse, not adjoining to or occupied as a dwelling house * * * in the nighttime, with intent to commit * * * larceny, shall be imprisoned not exceeding ten (10) years."

Whatever the rule may be elsewhere with regard to the crime of burglary,[1] there is nothing in the language of §11-8-4 from which it can be implied or inferred that ownership of the building involved is an essential or material element of the offense therein set forth. The common-law crime of burglary, on the contrary, involves "the dwelling-house of another." *State* v. *Hudson, supra.* No words of ownership are present in §11-8-4. Accordingly, we hold that under §11-8-4, neither an allegation of ownership, nor proof thereof is necessary; all that is required is that there be sufficient identification of the premises (1) to inform the defendant of the charge against him so that he may prepare his defense, and (2) to protect the defendant against a second trial for the same offense, that is, to protect him against double jeopardy. In the case at bar there is no question as to the identity of the building, and the description of the building was sufficient to inform defendant of the charge against him and to protect him against double jeopardy. Additionally, the language of the indictment was sufficient to apprise defendant of the fact that the building did not belong to him.

The defendant cites a 1955 Illinois case, *People* v. *Walker,* 7 Ill.2d 158, 130 N.E.2d 182, in his argument that ownership of the building is essential and that the proof must conform to the charge. However, defendant's reliance on

---

[1]See annotation in 169 A.L.R. 887 for a discussion of cases which consider the question of the necessity of naming the owner of a building in the indictment or information for burglary. It appears from this annotation that there is a wide divergence of opinion among the courts which have passed on this question.

*Walker* is of no help to him, as is seen by a reading of a later Illinois case.

In 1961, the Supreme Court of Illinois, in an opinion by Mr. Justice Schaefer, said in *People* v. *Stewart*, 23 Ill. 2d 161, 177 N.E.2d 237, that an indictment charging that defendant burglariously entered a building occupied and in possession of a named corporation was sufficient even though there was no allegation of ownership of the building involved. The court said that the two-fold purpose of the ownership requirement, to enable the accused to prepare for trial, and to guard against double jeopardy, were satisfied by proof of occupancy and possession.

> "When an allegation of ownership may be established, not by proof of ownership but by proof of occupancy and possession, a requirement that ownership must be alleged has become an empty formality. The premises involved are effectively identified, and the rights of the accused are fully protected by an indictment that charges the unlawful entry of a building in the possession of another." *Id.* at 168, 177 N.E. 2d at 241.

The Illinois court also rejected the claim that ownership be required in order to show that the building was not the property of the accused and to negative his right to enter. The court cited with approval an opinion by Mr. Justice Burch of the Supreme Court of Kansas, where he pointed out in *State* v. *Toliver*, 109 Kan. 660, 202 P. 99, 102, that both purposes were served by an indictment that alleged occupation and use of the building rather than its ownership.

Since there was evidence in the record pertaining to occupation of the building by Avery & Adams, Inc., the trial justice found that a reasonable inference of guilt could have been drawn. For the aforementioned reasons, we hold that the trial justice did not err in denying defendant's motion for a directed verdict.

## II

### Defendant's Motion for a New Trial

Under this exception defendant argues that the trial justice erred in denying his motion for a new trial. The defendant bases this motion on the usual grounds that the verdict is against the law and the evidence and the weight thereof with respect to each of the essential elements of the offense charged, namely, a "breaking" and "entering" with intent to commit larceny. With reference to the requirement of specific intent to commit larceny, defendant argues that there is no evidence that his intent in entering the building was to commit a larceny on the premises. He further argues that the uncontradicted evidence shows that he was too intoxicated to form the specific intent to commit larceny.

After exercising his independent judgment in passing on defendant's motion, the trial justice found that there was sufficient evidence to justify a finding by the jury that the state did prove beyond a reasonable doubt that defendant did break and enter, in the nighttime, the building occupied by Avery & Adams, Inc. In considering the question of defendant's intent, the trial justice expressly stated that he did not believe defendant and he found that although defendant had been drinking liquor prior to the entry, he was not so drunk as not to know what he was doing. On the basis of such findings, he further found as reasonable the inference drawn from the evidence by the jury that defendant entered the premises for the purpose of stealing some merchandise and that he was prevented from carrying out any merchandise because of the effectiveness of the alarm system and the efficiency of the Westerly police. He concluded that the state did prove beyond a reasonable doubt that defendant entered the premises with the specific intent of stealing merchandise.

In briefing and arguing this issue, defendant repeats some of the arguments made by him under his exception to the denial of his motion for a directed verdict, with respect to the question of proof of ownership of the premises. We have disposed of this issue, and therefore, no further discussion is necessary here.

The trial justice's findings with respect to the breaking and entering are supported by competent evidence. The evidence discloses the existence of a broken window and an opened door not too far from the broken window. The defendant admits his presence in the building. The defendant's contention that the evidence on this issue is full of ambiguities, uncertainties and confusion is without merit. We are convinced that the state has satisfied the test set forth in *State* v. *Brown,* 97 R. I. 95, 196 A.2d 138,[2] in proving "a breaking and entering."

We come now to the question of whether there is any evidence in the record to support a finding that defendant entered the building with the intent to commit larceny. For evidence to sustain such a finding we need only point to the officers' testimony about the radio they found near defendant in the boiler room and to the testimony of Charles H. Hoelck that the radio was the property of Avery & Adams, Inc., and that it was in its place in the front of the store when he secured the building on Saturday, November 4, 1967. From such evidence it was reason-

---

[2]In *State* v. *Brown, supra,* at 99, 196 A.2d at 141, the court said:
   "It is incumbent upon the state to prove beyond a reasonable doubt the existence of every essential element of the offense charged, and at no time is the defendant under obligation to offer evidence to disprove the existence of such elements. Where a defendant, however, contends that circumstances exist which would serve to exempt him from the effect of the statute or to excuse his conduct alleged to violate the statute * * * it is the burden of the defendant to adduce evidence sufficient to establish the existence of such matter, whether it is an affirmative defense or in the nature of an affirmative defense."

able to infer, as the jury and the trial justice obviously did, that defendant entered the building with intent to commit larceny therein. As the court said in *Reed* v. *State*, 7 Md. App. 200, 203-04, 253 A.2d 774, 776:

> "* * * finding the requisite intent to steal is never a precise process, for intention is subjective and it must therefore be inferred from the circumstances of the case, if it is found at all. [Cites omitted] While the State need not prove the larcenous intent by direct evidence, it has been held that there must be proof of some fact or circumstance or act or declaration of the accused in addition to the proof of the mere breaking and entry * * * from which the trier of fact can find the requisite intent; but the trier of fact can only draw reasonable inferences in an effort to discover the intent of the intruder."

As we have pointed out, it is reasonable to infer from the facts in the case at bar that defendant had an intent to commit larceny when he entered the premises in question.

The defendant next contends that the evidence shows that he was too intoxicated to form the specific intent to commit larceny. He argues that the trial justice erred in finding that defendant was not so drunk as not to know what he was doing. The defendant contends that the trial justice ignored the testimony of one of the state's witnesses that defendant was so intoxicated before the commission of this crime, that he was hanging over his car. To summarize, the defendant concedes that in the ordinary case the question as to degree of intoxication and as to the capacity of a person to commit a crime is usually a question for the jury and is based on credibility. However, he argues that the evidence was insufficient to prove beyond a reasonable doubt that he had the capacity to have the specific intent to commit larceny.

It is well settled in this state that although voluntary intoxication does not automatically excuse the commission

of an offense, when a specific intent is charged which aggravates the crime, and is an essential element of the crime, drunkenness may be offered to negative the specific intent charged. *State* v. *Reposa*, 99 R. I. 147, 149, 206 A.2d 213, 214-15; *State* v. *Vanasse*, 42 R. I. 278, 281, 107 A. 85, 86. However, if the intent was formed prior to the intoxication, the defense of drunkenness cannot negative this intent. *State* v. *Reposa, supra*. In the case at bar a specific intent to commit larceny was an essential element of the crime charged. In approving the jury's verdict the trial justice stated he disbelieved defendant's testimony and found that defendant was not so drunk as not to know what he was doing.

Our duty in reviewing his decision is clear. The trial justice approved the verdict of the jury. That approval will not be disturbed by us unless it is shown that it is clearly wrong or that the trial justice in reviewing the evidence overlooked or misconceived evidence which was material on a controlling issue. We are satisfied that he exercised his independent judgment in passing on the material evidence and that he neither misapplied the applicable law nor overlooked or misconceived any material evidence. There is no merit to defendant's argument that he ignored the testimony of one of the state's witnesses relative to the question of the degree of defendant's intoxication. After examining all of the pertinent evidence on this issue he found, in essence, that defendant knew what he was doing and that the state proved beyond a reasonable doubt that he entered the premises with the specific intent to commit larceny. The evidence as viewed by the trial justice supports his findings and we, therefore, affirm. *State* v. *Contreras, supra.*

The defendant's exceptions are overruled and the case is remitted to the Superior Court.

*Herbert F. DeSimone,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *Scott K. Keefer,* Special Asst. Attorney General, for plaintiff.

*Frank S. Cappuccio, Louis B. Cappuccio,* for defendant.